SUCCESSION OF MARTIN DUPLESSIS—LOUIS LOMBARD, Appellant.

Certain slaves were directed to be emancipated by the will of the deceased, and the will was admitted to probate, and an executor qualified, who died without having executed any part of it. No executor was appointed in his place ; but the heirs, protesting against the validity of the will, took possession of the property, which they sold, including the slaves ordered to be set free. On an application by a third person to be appointed dative testamentary executor, alleging that the succession had not been finally administered upon, as the slaves had never been emancipated, which appointment was opposed by the heirs as unnecessary : *Held,* that the facts of the case show no necessity for the appointment of an executor ; that the slaves, having been sold and passed into the hands of others, their right to freedom, which has not been impaired by the course pursued by the heirs, must be asserted contradictorily with the persons who purchased them, who are entitled to an opportunity of showing the nullity of the will.

The admission of a will to probate, and the order for its execution, are but preliminary proceedings necessary to the administration of the estate ; and do not amount to a judgment binding on persons not parties thereto.

The decision in *Lewis' Heirs* v. *His Executors et al.* (5 La. 387), that while the judgment or order of a Court of Probates receiving a will, and ordering its execution, is

unreversed, no other court can declare the will void, or prevent its execution, or ex-
amine collaterally into the correctness of the proceedings by which it was admitted
to probate, must be understood as relating to cases where the validity of a will is
attacked at the time of the order for its execution, or after it has been regularly
probated and ordered to be executed, but previous to the heirs or legatees coming
into possession of the estate; and not to actions of revendication in which property
is claimed or withheld under a will. Courts of ordinary jurisdiction before whom
such actions are brought, must necessarily be competent to decide on the validity
of the will thus drawn in question.

APPEAL from the Court of Probates of Plaquemines, *Leonard*, J.
*Lombard*, appellant, *pro se.*
*Preston*, for the heirs.

MORPHY, J.  Martin Duplessis, a free man of color, died in the
parish of Plaquemines on the 23d of June, 1833, leaving a nun-
cupative will under private signature, in which he made several
specific legacies of property, and ordered the emancipation of
the slave Sophie and her children.  The will was admitted to
probate, and was ordered to be executed, and Valfrey Duplessis,
a brother of the deceased, was appointed dative testamentary
executor, there being none appointed by the will.  He died, in
September, 1834, without having executed any part of the will,
and no one was appointed in his place.  The heirs of Martin
Duplessis, after having made a kind of protest against the valid-
ity of the will, took possession of the property and slaves belong-
ing to his succession, and sold all the property except Sophie
and her children, whom they kept until the year 1842, when
they proceeded to a partition before the District Court of the
First District, and caused these slaves to be sold under an order
of that court.  On the 25th of March, 1844, L. Lombard peti-
tioned the Court of Probates of the parish of Plaquemines, for
letters of dative executorship, stating that the succession of
Martin Duplessis had never been finally settled and adminis-
tered upon, as the negress Sophie and her children had not been
set free, as ordered by his will.  This application was opposed
by the heirs at law of the deceased.  They deny that Martin
Duplessis ever made any valid will; they alleged that he de-
parted this life intestate; that they have taken possession of his
succession, have made a partition of it, and have been in the
peaceable and uninterrupted possession of the same for more

than five years. On a hearing of the case, the application of Lombard was rejected, and he appealed.

The appellant has contended that the opposition of the heirs should not have been listened to, and he points to art. 972 of the Code of Practice, and art. 1112 of the Civil Code, which require that the party opposing an application of this kind, should allege a better right in himself than in the applicant. These articles do not, we apprehend, apply to a case like the present. The opponents do not claim the executorship for themselves, in opposition to the petitioner; but they say that there is no reason for making any appointment at all, because the will is invalid, and because they are and have been in possession of the estate for years. It is entirely unnecessary for us to enquire into the alleged invalidity of the will, as, upon another ground, we are of opinion that the application for letters testamentary was properly rejected. If Sophie and her children were yet in the possession of the heirs of Martin Duplessis, the fact of their having taken possession of the estate, some years ago, would afford no good ground for rejecting the application of the appellant, the special duty of an executor being to carry into effect the will of the testator, which it may be and is often the interest of the heirs to disregard. Thus article 1664 of the Civil Code provides, that if the heirs at any time wish to take from the executor the seizin of the estate, they must tender to him a sum sufficient to discharge the moveable legacies; and in the following article (1665), we find that "the testamentary executor is bound, even after the expiration of his seizin, to see the testament faithfully executed." In the present case, Sophie and her children are no longer in the possession of the heirs; they have been sold, and have passed into the hands of other persons, in disregard of whose apparent rights, the applicant, were he appointed executor, could not proceed to the emancipation of these slaves under the will. The right of Sophie and of her children to their freedom has not been lessened, nor in any way impaired by the course pursued by the heirs of the testator; but it must be asserted contradictorily with the person who bought them. If the will of the deceased be void, as is contended by the heirs at law, the purchasers of the property

and slaves sold, must have an opportunity of showing such nullity. They cannot be estopped by the decree of the Court of Probates ordering its execution. This court has often held that the admission of a will to probate, and the order given for its execution, are only preliminary proceedings necessary for the administration of the estate, and do not amount to a judgment binding on those who are not parties thereto.

As to the case of *Lewis' Heirs* v. *His Executors et al.* (5 La. 387), upon which the appellant relies, we had occasion to say in *Robert* v. *Allier's Agent* (17 La. 15), that it must be understood as relating to cases, where the validity of a will is attacked at the time an order is made for execution, or even after it has been regularly probated and ordered to be executed, but previous to the heirs or legatees coming into possession of the estate ; and not to actions of revendication, in which property is claimed, or withheld under a will. The courts of ordinary jurisdiction, before whom such actions are brought, must necessarily be competent to decide on the validity of the will thus drawn in question. 1 Rob. 116. 12 La. 214. 11 La. 385. Under this view of the case, we think, that there is no necessity or use for the appointment of an executor to the estate of Martin Duplessis, as there would be nothing under his control to be administered upon, all the property left by the deceased having been taken possession of, partitioned, and sold by the heirs at law.

*Judgment affirmed.*