*Eastern Dis.*
*April,* 1833.

LEWIS' HEIRS
*vs.*
HIS EXECTTOR
ET ALS.

A tutrix cannot question the jurisdiction of the Court of Probates, for the purpose of annulling a judgment pronounced in that court, on a claim admitted in her account rendered to that court, of her administration of an estate, owned jointly by herself and her minor.

---

5L 387
49 870

LEWIS' HEIRS *vs.* HIS EXECUTOR ET ALS.

APPEAL FROM THE COURT OF PROBATES OF THE PARISH AND CITY OF
NEW-ORLEANS.

Heirship may be proved by reputation and other corroborating facts, if no register of births or marriages is kept in the state where it is alleged to have been formed.

While an order or judgment of the Court of Probates, directing the execution of a will, is unreversed, no other court can declare the will void, prevent its execution, or collaterally examine the correctness of the order or judgment.

A person can only attack directly, an authentic act alleged to have been made by him.

EASTERN DIS.
*May,* 1833.

LEWIS' HEIRS
*vs.*
HIS EXECUTOR
ET ALS.

If the formalities required by law have not been pursued, a testament is void, no matter how strong may be the moral evidence, that it contains the testator's last will.

It is sufficient, if the declaration required for the validity of a mystic testament, is made in words conveying the same idea as those used in the *Louisiana Code.*

The plaintiffs, residing in Virginia, sued as the brothers and heirs of the late Robert Lewis, who died in August, 1832, leaving an estate in New-Orleans. The defendants were his executor, the legatees, and the attorney representing the absent heirs. This action was brought to set aside the mystic will of the deceased; to compel the executor to render his account, and transfer to the plaintiffs all the effects of the succession in his hands. It was alleged that in making the testament, the deceased had not complied with the formalities required by law, and that it contained a *fidei commissum* and a substitution.

The executor denied that the plaintiffs were brothers and heirs of the deceased, averred the due execution and legality of the testament, and pleaded a want of proper parties.

Turberville, a witness, testified, that he recognised his signature upon the envelope. He first saw the will in the hands of the notary who delivered it folded, but whether sealed or not, witness did not know, to the deceased, telling him it was his will. The latter, who was then sick in bed, acknowledged it to be so, and signed it, but did not open it, nor had at that time any means of knowing its contents. Witness afterwards signed it, when the envelope was closed. He thinks something was written upon the envelope, and that the executor closed it with wafers in the presence of the witnesses.

Lassere, testified, that the envelope was signed by the deceased, saying, when told by the notary that it was his will, " yes it is my will," in the presence of all the witnesses, whose signatures are upon the envelope, of whom two or three had signed before the witness. He does not recollect

EASTERN DIS.
*May*, 1833.

LEWIS' HERIS
*vs.*
HIS EXECUTOR
ET ALS.

to have seen the other witnesses or the notary sign. Nothing was read to witness, nor did he read any thing before he signed.

Other witnesses corroborated the testimony in part of Turberville and Lassere.

The notary testified that he heard the will read to the deceased; saw him sign it; received it closed and sealed from him, stating that it contained his last will, written by another but signed by himself; wrote the superscription; read it to the deceased; and saw the envelope signed by the witnesses, who had all been present when the deceased signed.

The Court of Probates declared the will null and void, ordered the executor to render his account, to deliver to the register of wills the property, and pay into court the moneys in his hands belonging to the succession. The executor appealed.

*Peirce*, for appellant.

*Schmidt*, on the same side, made the following points:

1. Plaintiffs have not established that they are the legitimate brothers and heirs of R. Lewis, the testator. *La. Code*, arts. 89, 91, 103, 107, by which the question is to be decided, the laws of Virginia not being in evidence. *Taylor* vs. *Swett*, 3 *La. Reports.*

2. Courts of Probates are not by law authorised to annul a will; this power belongs to courts of ordinary jurisdiction. *Code of Practice, arts.* 921, 924, *sec.* 6.

3. Parol testimony inadmissible to prove that the acts declared by the notary to be done in the act of superscription were not performed. *La. Code, arts.* 2233, 2256; *Barry* vs. *Louisiana Insurance Company.* 11 *Martin*, 630; *Sirey, vol. for* 1826, 2 *partie*, 180; 5 *Toullier*, *nos.* 464, 501; 11 *Dalloz*, 32. The will being recorded and having the force and effect of record evidence, cannot be contradicted or falsified by parol proof. The petition contains no sufficient allegation under which such proof is admissible.

EASTERN DIS.
  May, 1833.
═══════════
LEWIS' HEIRS
    vs.
HIS EXECUTOR,
  ET ALS.

4. The will is sufficiently closed and sealed. The superscription and process verbal is conclusive proof on the subject. *Code of Practice, art.* 943. 5 *Toullier, no.* 501.

5. The law of France furnishes no rule for our government. Because it differs essentially from ours. *French Code, arts.* 976, 7, 8, 9. *Vide* 34 *Merlin's Rep. p.* 1; 15 do. *Quest. de Droits, p.* 420.

Because authors of reputation hold a contrary doctrine. de *Malville Cental, Old Code, liv. vol.* 2, *p.* 442, *art.* 976. 1 *Grenie.*

Because the latest decision shows the seal to be mere matter of form. *Heritiers Poulet* vs. *Marbin & Consart,* 11 *Dalloz,* 15.

Because, the reasons of the decisions in France not applicable here. 11 *Merlin's Repert.,* 40, 41, 42, 43. *Heritiers Proot,* 11 *Dalloz,* 14. Words must be taken in their ordinary acceptation, and as understood by the community generally. *La. Code, art.* 14; 6 *Toullier, p.* 294, *no.* 313. Even if such meaning be vicious. *Ibid, no.* 314. *Webster's Dictionary* shows, that fastening with wafers is sealing, and common usage not only in Louisiana but throughout the United States, sanctions that use of the word. *Griffith's Law Register, pages* 7, 35, 63, 96, 129, 200, 245, 226, 392, 414, 435, 455, 497, 570, 605, 659, 678, 753, 833, 907, 983, 1034, 1107, 1201. For the mutations which the doctrine of the common law has undergone, see *note to page* 1201, which shows that a wafer with a blank paper is a seal.

6. Sealing is equivalent to *closing* and *sealing.* 5 *Toullier, p.* 698, and *vice versa. Closing* is equivalent to sealing and closing. *Bonat* vs. *Bonat,* 11 *Dalloz,* 17. *Heritiers Ichon* vs. *Fontemoing, ibid,* 20.

7. The *will* was duly presented by testator. 1 *Grenier, no.* 264, *p.* 267; 5 *Toullier, no.* 472; 11 *Dalloz, p.* 21; *Nauthon* vs. *Pellet, ibid,* 23. The notary has declared that it was done; and the superscription shows with sufficient certainty that it was done in presence of all the witnesses.

8. The bequest to Nicholas Lewis does not contain a *substitution.* He takes only the *usufruct* permitted by *La. Code,*

*art.* 1509, and which is not susceptible of substitution. Proudhon, *Traité d'Usufruit &c. p.* 35 *et seq.* The children of N. Lewis take direct from the testator, and in the event of their inability the asylums supply their place, which is allowable. *Vide La. Code, art.* 1504; *Farrer* vs. *M'Cutcheon,* 4 *N. S.* 45; and *Tarbe* vs. *Arnaud,* not applicable to a similar disposition. In France the question has been decided. *Vide Colignon* vs. *Millereau,* 30 *Sirey;* 2 *Partié,* 156; *Ibid, Quetton St. George* vs. *Quet,* 237.

2 EASTERN DIS.<br>
*May,* 1833.<br>
━━━━━━<br>
LEWIS' HEIRS<br>
*vs.*<br>
HIS EXECUTOR,<br>
ET ALS.

*Mazureau,* for appellees.

*Slidell,* on the same side, made the following points:

1. The will is not closed and sealed, as required by article 1577 of the Code. To close is not to seal. A seal " is a stamp engraved with a particular impression, which is fixed upon the wax that closes letters, or affixed, as a testimony." See *Johnson's Dictionary.* A seal " is an impression upon wax, wafer, or some other tenacious substance capable of being impressed. See *Warren* vs. *Lynch,* 5 *Johns. Rep. p.* 244, and the authorities there quoted.

2. Article 1577, is not a new provision of the Code, it is to be found in the *Old Code, art.* 99, *p.* 228; and effect must be given to the French text. *Durnford* vs. *Clark's Estate,* 3 *La. Rep. p.* 202. "*Scellé*" means sealed with some impression of a stamp or seal, and the testament is null if there be no impression of a seal. 5 *Toullier, p.* 451, *no.* 463; *Paillet's Com.* on *article* 976 of *Code Napoleon; Dalloz's Jurisprudence de* 19 *siecle, vol.* 11, *p.* 13; 1 *Grenier, Traité des Donations, ps.* 472. 479; 2 *Delvincourt, p.* 306; *Merlin's Repertoire de Jurisprudence, verbo Testament, sec.* 2, 3, *art.* 3, *no.* 4; *Favard, verbo Testament, sec.* 1, 4, *no.* 4.

3. The superscription does not show that the formalities of the law have been observed; and any defect therein is fatal. See case of *Heritiers Baret, Court Cassation, reported* 11 *Dalloz, p.* 26; *Heritiers Lepiserti,* 11 *ibid.* 27, 8; *Heritiers Cox,* 11 *ibid. p.* 30; 5 *Toullier, p.* 455, *no.* 471, 472; 33 *Sirey,*

*Recueil General*, verbo *Testament*, ser. 11, sec. 1, cert. 6, no. 10, p. 366. It does not declare that the paper was closed and sealed; it only declares that it was sealed. It does not declare that the presentation was made in the presence of the witnesses. These facts must result clearly from the terms of superscription, and cannot be supplied by proof or inference. See 34 *Merlin's Rep.* p. 37. *Verbo Testament*, sec. 2, 3, art. 3, no. 13.

All the formalities are *strictissime juris*, the want of any is fatal. *Civil Code*, art. 1588; *Bouthemy* vs. *Dreux et al*. 12 *Martin*, 644; *Knight* vs. *Smith*, 3 *Martin*, 163; 1 *Grenier Traité des Donations*, p. 10, 11, 15, 31, 37.

5. Parol proof may be admitted to contradict the enunciation of superscription. 3 *Martin*, 62, *Laylest* vs. *Schons*; 12 *ib*. 641, *Bouthemy* vs. *Dreux et al*, 11 *ibid*. 630, *Barry* vs. *La. Insurance Company.*

6. Subscribing witnesses are competent to disprove facts averred in act of superscription. There are no grounds of incompetency but those expressly stated in the *Code*, art. 2260. The provisions of the Spanish law on the subject of notaries, are repealed by act of March 25, 1818, section 25. See 1 *Phillips' Evidence*, ps. 31, 33. 9 *Toullier*, ps. 492, 495. nos. 312, 313.

7. The residuary bequest to Nicholas Lewis, is a substitution and void. *Civil Code*, arts. 1509, 1469; *Farrer* vs. *M' Cutcheon*, 4 *N. S.* 45; 5 *Toullier*, ps. 16 to 41; 8 *Pandectes Françaises*, p. 245; 7 *Sirey*, p. 1211, 1212.

8. The Court of Probates alone could entertain a suit for the nullity of the will. *Harty* vs. *Harty*, 8 *N. S.* 518; *M' Conner* vs. *Dunbar*, 1 *La. Rep.* 19.

The opinion of the court, MATHEWS, J. absent, was delivered by PORTER, J.

This is an action instituted by the heirs of the deceased Robert Lewis, to annul and set aside an instrument which had been probated as his last will and testament; or in case the will should not be declared void *in toto*, to have certain bequests therein. contained, annulled.

The petition sets out that the will which the plaintiffs seek to annul, purports to be the mystic will of the said Robert Lewis, written by another person, and for the validity of such wills, the law expressly requires that the same, or the paper serving as their envelope, be *closed* and *sealed.* Second, that the testator shall present the same thus closed and sealed to the notary, and to seven witnesses, or cause it to be closed and sealed in their presence. Third, that he shall declare to the notary in presence of the witnesses, that the paper contains his testament written by himself, or by another by his direction, and signed by him, the testator. Which your petitioners aver, and are ready to prove was not done, and which does not, as it ought to appear to have been done, from the act of superscription of said will.

The answer puts at issue the heirship of the plaintiffs, asserts the validity of the will, and avers the legality of the several legacies contained in it.

There is also an answer by one of the legatees, a prayer of intervention on the part of one Sarah Lewis, and an answer on the part of the attorney appointed to represent the absent heirs, which we do not consider necessary to set out.

Before we enter on the principal questions in the cause there are two or three points of considerable importance, but of easy solution, which may be disposed of.

The first in order of these, is an objection to the sufficiency of the evidence to establish that the plaintiffs are the heirs of the deceased. It appears from the testimony adduced, that they were born in Virginia, and that in that state no official register of marriages is kept, nor any of births. We think, under these circumstances, that the relationship may be proved by reputation, and by other facts tending to establish the connexion. The evidence on that head satisfies us in the present case, that the plaintiffs are the heirs of the deceased.

*Heirship may be proved by reputation and other corroborating facts if no official register of births or marriages is kept in the state where it is alleged to have been formed.*

The second is, that the Court of Probates had not jurisdiction in this case, and could not entertain a suit to annul a will. We think on the contrary it had jurisdiction, and

*While an order or judgment of the Court of Probates directing execution of a will is unreversed*

50

EASTERN DIS.
*May,* 1833.

LEWIS' HEIRS
*vs.*
HIS EXECUTOR
ET ALS.

no other court
can declare the
will void, prevent
its execution, or
collaterally exa-
mine the correct-
ness of the order
or judgment.

we do not see that any other court had already received the will and ordered its execution. While that judgment or order stood unreversed, no other court could declare the will void, and say it should not be executed. The suit was therefore properly brought, no other tribunal could collaterally examine into the correctness of the proceeding by which the will was probated.

The third objection is, that the allegations in the petition did not authorise the introduction of parol evidence to attack the verity of the instrument, even admitting that species of proof to be admissible, under proper averments.

We have already, in order to show the strength of this objection, set out verbatim, the allegations in the petition. It appears to us they did authorise the proof. The plaintiffs say they will prove, that those things which are necessary to give validity to the will, were not done ; it is true, they add, that these things do not appear to have been done, as they should appear, by the superscription; but, under these allegations, the fair and just construction appears to us, that they would prove by evidence *aliunde*, as well as by the instrument itself, that the formalities of law had not been complied with.

But another, and more serious objection, is made to the introduction of parol evidence. The act of the notary receiving the will in the presence of witnesses, is an authentic act : and it makes full proof of what is contained in it. To authorise you to disprove its verity, you should have made an *inscription de faux*, as is the practice in France. Such is certainly the course of proceeding in that country, and it appears there are two inscriptions of this kind. *Faux principal*, which we understand to be equivalent to a prosecution here on behalf of the state against the authors of the crime. The other is called the *faux incidentale*, to which we have nothing similar in our practice, and which we do not think it very desirable we ever should. By this proceeding, whenever an act is presented by one of the parties, in the course of a trial, which purports to be authentic, and the other alleges it is not so, the civil suit is suspended until a trial can be had

on the *inscription de faux*, which partakes of the character of a criminal prosecution. This, in France, it is proper to remark, is the consequence of positive legislation. Here our legislature have furnished us with no provisions on the subject, which implies very strongly they did not intend the remedy should be used. Our practice in Louisiana, it appears to us, is more simple and direct, and attains the ends of justice just as efficiently. We do not wait for a judgment in the criminal prosecution, because it could not be evidence against those whose civil rights were affected by the instrument. Instead of the *faux incidentale*, we permit the party attacking the instrument, to introduce the proof in the civil suit; all we require of him is, that if the act emanates from him, or is alleged to emanate from him, he shall attack it directly, and put his opponent on his guard. 6. *N. S.* 512. We see no reason to change our practice ; positive law does not require us to do so—convenience does not. Under our code, we think there is the same authority to bring a suit to set aside an instrument which stands in the way, and obstructs the enjoyment of a right to property, as there is to sue directly for that property itself. And if the suit can be brought, the proof may be admitted, unless we come to the conclusion that what notaries do, is binding on the whole world, which is not pretended, and could not be maintained.

We now come to the merits of the case. The Louisiana Code requires, for the validity of the mystic, or secret testament, that,

" The testator must sign his dispositions, whether he has written them himself, or caused them to be written by an other person.

" The paper containing these dispositions, or the paper serving as their envelope, must be closed and sealed.

" The testator shall present it, thus closed and sealed, to the notary and to seven witnesses, or he shall cause it to be closed and sealed in their presence. Then he shall declare to the notary, in the presence of the witnesses, that the paper contains his testament, written by himself, or by another, by his direction, and signed by him the testator."

*Margin notes:*

EASTERN DIS.
*May*, 1833.

LEWIS' HEIRS
*vs.*
HIS EXECUTOR
ET ALS.

A person can only attack, directly, an authentic act alleged to have been made by him.

LEWIS' HEIRS
vs.
HIS EXECUTOR
ET ALS.

If the formalities required by law, have not been pursued, a testament is void, no matter how strong may be the moral evidence that it contains the testator's last will.

The object of these ceremonies, is to prevent impositions being practised on men in their last moments. And the law, in its anxiety to guard against the testator being circumvented, or practised on, will not permit a testament to have any effect, no matter how strong the moral evidence may be that it contains truly his last dispositions of his property. The formalities, (our Code says) must be observed, otherwise the testaments are null and void. Courts of justice, therefore, can do nothing else but inquire, when a case of this kind arises, whether the formalities have been pursued.

In the case before us, the evidence satisfies us, that the testator did not declare, in the presence of the witnesses, whether the will had been written by himself, or by an other under his dictation, and signed by him. This declaration is required to guard, as much as possible, against the substituting, thereafter, another will in place of that which the testator presents, and in furtherance of the object which the law has so much at heart, is not without its utility. But whether of utility or not, it is a formality in the making of a will; it is a formality which has not been pursued, and for want of which the law has declared the testament shall be null and void.

It has been contended that the words used in the law are not indispensably necessary to be followed by the testator, and that other language, which conveys the same idea, is sufficient. This is true, and there are several cases decided in the French courts on that principle. Whenever it can be fairly inferred from what was done, that the law has been complied with, it is sufficient. Here we cannot indulge in such a presumption, for the proof repels it.

It is sufficient, if the declaration required for the validity of a mystic testament is made in words conveying the same idea, as those used in the Louisiana Code.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Probate Court be affirmed, with costs.