Simost, J.
delivered the opinion of the court.
Plaintiff alleges that her natural and acknowledged daughter, Maria Josepha, died in Prance, a minor and intestate, in May, 1837; that she died unmarried, without descendants, and had never been acknowledged by her father; and that she, the plaintiff, is her sole heir, and as such had accepted her succession. She further states that among the property left by her child, there was a legacy of $6000 and interest, consisting in notes, which, by a notarial act, signed by the interested parties on the 28th of October, 1839, [11] were deposited in the hands of Theodore Seghers, the notary before whom said act was passed; that she is entitled to claim and collect the same as her property, but that said notes were claimed by the defendant, Allier, who resides in Prance, and is represented here by an agent; that said defendant claims the notes by virtue of a pretended testamentary disposition, made in his favor by the deceased Maria, and that it was agreed and stipulated in the said notarial act that said notes should remain deposited in the hands of the notary, until a competent judicial U'ibunal should decide whether they should be delivered to the plaintiff or to the defendant, Allier. She prays that Allier by his agent, and the notary, be both cited, and that judgment be rendered ordering the notes to be delivered to her as her property. Defendant, Allier, excepted to the plaintiff’s petition, by pleading that a decree of the court of probates had ordered the execution of the olographic will of the deceased, by virtue of which, he became entitled to the notes in question ; that said decree cannot be treated as a nullity or attacked collaterally, and that this can only be done by a direct action of nullity instituted in the said court of probates. This exception was overruled by the inferior court with leave to plead the same in defendant’s answer to the merits, and said defendant having joined issue by pleading again the said olographic testament and the decree of the probate court ordering it to be executed, which he sets up as conclusive, unless set aside by a direct action of nullity, the inferior court rendered a judgment, in which the judge, after recognizing that the subject in litigation is properly and exclusively within the jurisdiction of the court of probates, declares to retain the suit, and orders that the defendant, Allier, shall institute a suit against plaintiff in the probate court of the parish of Orleans, in order to establish within six months the validity of the will; and [12] *12 that, if such suit he not instituted within the time allowed, the court a quo shall proceed to the decision of the present suit, considering the proceedings in the probate court, relied on by defendant, as illegal and null. From this judgment the defendant appealed.
The facts of the case, as shown by the record, are these: Maria Josepha, natural daughter of the plaintiff, was born in Mew Orleans, on the 30th of July, 1816; she went to France with her mother’s consent in 1822, remained there ever since, and died in June, 1837, without posterity. In 1828, a legacy of upwards of $6000, (which is the object in controversy in this suit,) accrued to her from the testament of one Dupuis. The deceased left an olographic will, by which she gave and bequeathed to the defendant, Allier, with whom she was to be married, all that the law permitted her to dispose of; and a short time after her death, such proceedings were had, at the request of the universal legatee, before the French judicial authorities and according to the French laws, that on the 18th of July, 1837, the said testament and its envelope were ordered to be deposited, and were so deposited, in the office of a notary public for that purpose appointed by the president of the tribunal; an inventory of the estate was subsequently made. The will was not proven, as, in France, the law does not require proof of the handwriting and signature of an olographic will, and as, according to those laws, it is only when its genuineness is attacked that such proof becomes necessary. There is, however, no evidence in the record, showing that the testamentary heir ever was put in possession of the estate, according to art. 1008 of the French Code, and this is perhaps immaterial for the decision of the question under consideration. On the 17th of December, 1838, plaintiff presented a petition to [13] the court of probates, to be authorized to accept the succession of her daughter under the benefit of inventory, and to be appointed administratrix thereof. On the 28th of October, 1839, a notarial act was passed before Theodore Seghers, in and by which the parties now before us agreed that the notes in question, belonging to the estate of plaintiff’s daughter, should remain deposited in the hands of the notary, until they could settle the matter in dispute amicably between themselves, or obtain thereon the decision of a competent tribunal. Until the filing of the petition in this case, no proceeding had been had before the court of probates in relation to the will; but immediately after, (the dates have been changed by consent of parties,) a petition was presented by defendant to the judge of said court, who ordered the testament in controversy to be recorded, homologated and executed, appointed Louis Pifié as dative testamentary executor, and in the mean time ordered an inventory of the property of the succession to be taken in the presence of the parties interested; which was done accordingly. A few days afterwards, the dative testamentary executor obtained from the court of probates, a rule on the plaintiff in this suit to show cause why the notes therein alluded to should not be delivered to him, to be by him administered in the same manner as the other property of the estate, which rule was excepted to by said plaintiff on several grounds, among which the pendency of the present suit is pleaded. What became of this rule and of the exceptions, the record does not inform us. All the proceedings had in France in relation to the testament *13 in question and those had before the court of probates, are contained in the record.
In this state of the case, we are called upon by both parties to give a definitive decision on their respective rights to the succession of Maria Josepha; they both complain of the judgment of the inferior court; and it is contended on the part of the plaintiff, that having shown her title to the notes in [14] dispute, as the sole heir of the deceased, the defendant could only succeed by proving a better title; that the will under which he sets up Ms title had never been proved, that the decree of the probate court ordering it to be executed, having been rendered ex parte, cannot have any legal effect against her, and that therefore she is entitled to the possession of said notes. She also maintains that if the testament be considered as genuine and proved, its dispositions are to be governed by the laws of France, according to which, the testatrix could only dispose of one half of her property.
It is insisted on the part of the defendant that the decree of the court of probates is definitive and cannot be attacked collaterally; that at all events, it was not necessary to prove the handwriting and signature of the testatrix previous to obtaining the order of execution, and that said decree is a sufficient title under which he ought to be allowed to claim and recover the notes from the depository.
We are not ready to say that the decree of the court of probates, ordering the will to be executed, ought to be so binding upon the plaintiff, who was not made a party to the proceedings, as to preclude her from questioning or disputing-its legal effect or validity before the proper tribunal, and showing that it was rendered without sufficient evidence; for, as this court has several times held, the admission of a will to probate and the order given for its execution, are only preliminary proceedings necessary for the administration of the estate, and do not amount to a judgment binding on those who are not parties to them. 11 La. Rep. 888, 392.
On the other hand, we are not disposed to deny to the defendant the right of proving the olographic will of the deceased, according to law, before the competent tribunal, contradictorily with the plaintiff, Code of Practice, art. 935; and of recovering under said will, if, after having adduced such [15] evidence as may be deemed necessary to support it, its execution be decreed according to Our laws; but this cannot be done in the present suit.
This action cannot properly be called an action of revendication of property in the possession of a testamentary heir or universal legatee, as the defendant has never been put in possession of the estate of the testatrix; and although he sets up the will as the basis of Ms title to the notes which he claims, we cannot now decide upon its validity and legal effect; as, according to the opinion hereinafter expressed, it has never been probated in a legal manner. On the question of jurisdiction arising from the state of the case, we understand the distinction repeatedly made by this court to be, that whenever the validity or legality of a will is attacked and put at issue (as in the present case) at the time that an order for its execution is applied for, or after it has been regularly probated and ordered to be executed, but previous to the heirs or legatees coming into possession of the estate under it, courts of probate alone *14 have jurisdiction to declare it void, or to say that it shall not be executed. This is the purport and extent of the decision in the case of Lewis' heirs v. His Executors, 5 La. Rep. 387; Code of Practice, art. 924, sect. 1. But when an action of revendication is instituted by an heir at law, against the testamentary heir or universal legatee who has been put in possession of the estate, and who sets up the will as his title to the property, district courts are the proper tribunals in which such suits must be brought. 6 Mart. N. S.263; 2 La. Rep. 23; 11 Id. 388 and 392. In this case the parties appear to have fully understood this distinction, as it is specially provided in the notarial act of the 28th of October, 1839, that the notes shall remain in the hands of the notary, until [16] their respective rights and pretensions under or against the will of the deceased, shall have been decided upon (contradictorily) by a competent tribunal. This competent tribunal, from whom a rule to show cause was after-wards obtained, was‘necessarily the court of probates, who alone had jurisdiction to order or refuse the execution of a will; and we are at a loss to conceive what may have been the views of the plaintiff in bringing this suit before the commercial court.
We therefore agree with the judge a quo that the present litigation should be gone through before the court of probates; and as, in our opinion, the decree of said court ordering the will to be executed, cannot prejudice the plaintiff who was not a party to the proceedings; and as the defendant cannot be precluded from proving in a legal manner the olographic testament under which he claims, we think the inferior court ought not to have retained this suit, and that the matter in controversy ought to be wholly submitted to the proper tribunal, on a continuation of the proceedings under the rule already obtained, and which will present the real issue between the parties. We come the more readily to this conclusion, that if the will be regularly proved, there may arise a question already presented by the pleadings in this case, in relation to the extent of the testamentary disposition, and to the portion of her estate which the testatrix could legally dispose of, which question is also exclusively within the jurisdiction of the court of probates. Code of Practice, art. 924, sect. 14; art. 1022.
Notwithstanding the opinion above expressed, which puts an end to this suit before the commercial court, we shall now proceed to examine the question so much debated in argument: whether the court of probates ought to have required proof of the handwriting and signature of the testatrix, before ordering the execution of the will in controversy ? Under the laws of Prance, [17] see Napoleon Code, arts. 1007, 1008; Sirey’s Code Annoté, art. 970, note No. 32; Code de Procéd. Civ. arts. 916, 918, proof of the execution of an olographic testament is not required, and after certain proceedings which are certified to in a process verbal signed by the president of the tribunal de premiere instance, the testament is deposited in the office of a notary public par lui commis. All this appears to have been done in the matter of the will of Maria Josepha, and it is therefore well established that the handwriting and signature of the testatrix have not been proven in Prance. In conformity with the 1681st article of the La. Code, testaments made in foreign countries cannot be carried into effect on property in this State, unless they have *15 been duly registered and ordered to be executed; and the article 1682 provides that: “ this order of execution shall be granted without any other form than that of registering the testament, if it be established that the testament has been duly proved before a competent' judge of the place where it was received. In the contrary case, the testament cannot be carried into effect, without its being first proved before the judge of whom .the execution is demanded.” From this text of our laws, we are clearly satisfied, without its being necessary to inquire into the meaning of the word “received,” that if a testament made in á foreign country has not been proved, because the law of that country did not require it to be proved before ordering its execution, it cannot be carried into effect in Louisiana, without being first duly proved before one of Our courts of probate. In the case of the State v. The Probate Judge of Iberville, 8 Martin, N. S. 585, this court said: “ we admit to probate wills made out of the State, which have been received elsewhere, but we require proof of their execution where this sanction has not been bestowed on them.” This doctrine is certainly correct; no distinction is made as to its being necessary or not to prove such wills in the place where they were received, and when such proof is required here, it must be made in the manner provided for by our laws. In the case of a nuncupative [18] testament by public act, which is full proof of itself, unless alleged to be forged, the production of a duly authenticated copy, will perhaps dispense with the proof of its execution in any other mode, as it is provided for in our own Codes: La. Code, art. 1640; Code of Practice, art. 930; but when effect is sought to be given to an olographic testament or any other which does not carry on its face the proof of its genuineness, we think that if it is not shown that it has been duly proved elsewhere, the protection afforded to our fellow citizens by the laws of their country, is-particularly called for; and that their property should not pass into foreign hands, without previously requiring as strict a compliance with the requisites of the Louisiana Codes, as they may themselves be subjected to.
"We cannot therefore consider the order to deposit the will in question in the office of a notary, or any other subsequent proceeding had under the French laws, as tantamount to the proof required in the 1682d article of our Code; and we have thought proper to decide this point with a view to instruct the judge of probates that he ought not to order the olographic will of Maria Josepha Kobert to be carried into effect, without its beingyirsi proved before him according to law; unless satisfactory evidence is produced to show that it has been duly proved in France.
It is therefore ordered, adjudged and decreed, that the judgment of the commercial court be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that there be judgment against the plaintiff as in case of nonsuit, and that she pay costs in both courts.