## ELLIS and Others v. DAVIS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF LOUISIANA.

Argued November 9th and 12th, 1883.—Decided December 10th, 1883.

*Conflict of Laws—Constitutional Law—Jurisdiction—Louisiana—Practice— Probate of Wills—Wills.*

1. When an heir at law brings a suit in equity to set aside the probate of a will in Louisiana as null and void, and to recover real estate ; and prays for an accounting of rents and profits by an adverse party in possession, who claims under the will, this court will refuse to entertain the prayer for recovery of possession, if the complainant has a plain, adequate, and complete remedy at the common law. *Hipp* v. *Babin*, 19 Howard, 271, affirmed.

2. Circuit courts, as courts of equity, have no general jurisdiction for annulling or affirming the probate of a will. *Broderick's Will*, 21 Wall. 503, affirmed.

3. Jurisdiction as to wills, and their probate as such, is neither included in nor excepted out of the grant of judicial power to the courts of the United States. So far as it is *ex parte* and merely administrative, it is

not conferred, and it cannot be exercised by them at all, until, in a case at law or in equity, its exercise becomes necessary to settle a controversy of which a court of the United States may take cognizance by reason of the citizenship of the parties.

4. If by the law obtaining in a State, a suit whose object is to annul and set aside the probate of a will of real estate can be maintained, it may be maintained in a federal court, when the parties are on one side citizens of the State in which the will is proved, and on the other citizens of other States. *Gaines* v. *Fuentes,* 92 U. S. 18, approved.

5. By the laws of Louisiana an action of revendication is the proper one to be brought for the purpose of asserting the legal title and right of possession of the heir at law to the succession, when another is in possession under claim of title by virtue of a will admitted to probate. In a proper case as to parties this action can be brought in the Circuit Court of the United States. And as it furnishes a plain, adequate and complete remedy at law, it is a bar to the prosecution of a suit in chancery.

6. In regard to the transfer of the Beauvoir estate to the defendant by the testatrix in her lifetime, no fraud is shown to warrant the interference of a court of equity.

Bill in equity by the appellants as heirs at law and next of kin to recover possession of real estate, part of which was devised to the appellee, by Sarah Ann Dorsey, by will duly proved in the State of Louisiana, and part of which was situated in Mississippi and was given to him by Mrs. Dorsey in her lifetime, and to set aside the will as made under undue influence, and the conveyance as obtained by the exercise of undue and improper influence, and to have an accounting of rents and profits. Demurrer to the bill. The bill was dismissed below. The plaintiffs appealed.

*Mr. William Reed Mills* for the appellants.

*Mr. John D. McPherson* and *Mr. Calderon Carlisle* for the appellee.

Mr. Justice Matthews delivered the opinion of the court.

The appellants, who were complainants below, are alleged in the bill of complaint to be, respectively, citizens of New York or Missouri, or British subjects and aliens, the defendant being a citizen of Mississippi.

It is set forth in the bill that Sarah Ann Dorsey died on July 4th, 1879, seized in fee simple of certain real estate, consisting

of two plantations in Tensas Parish, in Louisiana, an estate called Beauvoir and other property in Harrison county, Mississippi, and real estate, not described, in Arkansas, besides a large amount of movable and personal property, rights, and credits, also not described; that she died, leaving no heirs in the ascending or descending lines, the appellants being her next of kin and sole legal heirs in the collateral line, entitled to succeed, in case of intestacy, to the whole of her estate; that during her lifetime, on May 10th, 1878, Mrs. Dorsey, by a notarial act of procuration, constituted the defendant her agent and attorney in fact, with full and special powers to take exclusive control, charge, and management of all her property and estate, and all transactions and business in any manner connected therewith, including the power,

"For and in her name to sue and to be sued, to purchase, lease, alienate, or encumber real estate situate anywhere, to borrow money, execute notes, or other evidences of indebtedness.

"That, in virtue of said agency, the defendant entered upon and assumed the exclusive management of said property and business, and took possession of all account books, title deeds, and papers thereto appertaining, and continued in the exclusive control, management, and possession as said agent to the time said agency expired by the death of the principal, and since her said death has still continued in said exclusive possession, management, and control.

"That though, on the expiration of said agency, it was incumbent on and the duty of said defendant to render to said heirs, all of whom, and their respective rights, were well known to him, a full, fair, and correct account of his administration of said agency, and to surrender to them, all and singular, the said property, account books, title deeds, papers, &c., which had then come into his possession, and which your orators had well hoped he would have done, yet, on the expiration of his said agency, said defendant, notwithstanding amicable demand, refuses still so to do."

It is further alleged in the bill that the defendant claims that the said Sarah Ann Dorsey, by her last will and testament,

bequeathed to him all her property, for his own sole use and benefit, and thereby constituted him her sole heir and executor, and that, by virtue thereof, he is entitled in his own right to said estate; and the bill admits that on July 15th, 1879, the defendant caused to be filed in the Second District Court for the Parish of Orleans an instrument written and signed by Sarah Ann Dorsey, of which the following is a copy:

"BEAUVOIR, HARRISON CO., MISS., *Jan.* 4, 1878.

"I, Sarah Ann Dorsey, of Tensas Parish, La., being aware of the uncertainty of life, and being now in sound health in mind and body, do make this my last will and testament, which I write, sign, and seal with my own hand, in the presence of three competent witnesses, as I possess property in the States of Louisiana, Mississippi, and Arkansas. I owe no obligation of any sort whatever to any relation of my own; I have done all I could for them during my life; I therefore give and bequeath all my property, real, personal, and mixed, wherever located and situated, wholly and entirely, and without hindrance or qualification, to my most honored and esteemed friend, Jefferson Davis, ex-president of the Confederate States, for his own sole use and benefit, in fee simple, forever; and I hereby constitute him my sole heir, executor, and administrator. If Jefferson Davis should not survive me, I give all that I have bequeathed to him to his youngest daughter, Varina.

"I do not intend to share the ingratitude of my country towards the man who is, in my eyes, the highest and noblest in existence.

"In testimony whereof I sign this will, written with my own hand, in presence of W. T. Watthall, F. S. Hewes, and John C. Craig, subscribing witnesses, resident in Harrison County, Mississippi.

"(Signed)     SARAH ANN DORSEY.

"At Mississippi City, on the fourth day of January, eighteen hundred and seventy-eight, the above-named Sarah Ann Dorsey signed and sealed this instrument, and published and declared the same as and for her last will, and we, in her presence and at her request, and in the presence of each other, have hereunto subscribed our names as witnesses.     "W. T. WATTHALL.
                                         "F. S. HEWES.
                                         "JOHN C. CRAIG."

But it is charged that the pretended will is not valid, but is void, because at the time of writing and signing the same Sarah Ann Dorsey was not of sound and disposing mind, because the same was written and signed by her when under the undue influence of the defendant, which undue influence excited and aggravated the causes depriving her of a sound and disposing mind, rendering her more susceptible to such undue influence, and because the motive and object inducing and controlling the testatrix to make the same were contrary to law.

The bill then proceeds to recite in detail a narrative of facts alleged in support of these charges affecting the testamentary capacity of Mrs. Dorsey and the integrity of the execution of the instrument as her testament; and alleges further that the defendant, " though in nowise ignorant of the premises hereinbefore set forth touching the nullity of said alleged will," nevertheless resorted to proceedings before the Second District Court for the Parish of Orleans for the probate thereof, " *ex parte* and without any previous notification thereof, judicial or extra-judicial." And it is thereupon further alleged:

"That by said proceedings it appears that on the 15th July, 1879, defendant, through his attorneys, filed his certain petition, in which he alleges that by the tenor of the last will and testament of Mrs. Sarah Ann Dorsey, dated 4th January, 1878, he is made the legatee and executor of the deceased ; that said will had been on said day filed, and which he prays might be duly proved according to law ; that thereupon an order was obtained that said will should be proved before the judge of said court forthwith ; that in accordance with said order, and on proof that said instrument was wholly written, dated, and signed in the handwriting of the testatrix (the only proof essential under the laws of Louisiana and the practice of its courts for an *ex parte* probate of an olographical will), and on the further (and unusual in such *ex parte* probate) sworn statement of two of the subscribing witnesses that " the testatrix, Mrs. Sarah Ann Dorsey, at the time of the execution of the aforesaid will, was of sound and disposing mind," a decree of probate, in usual form, was rendered, decreeing the probate and registry of the will and execution of its provisions, in-

cluding the issuing of letters of executorship, on defendant's complying with the provisions of law..

"That by said proceedings it further appears that without previously qualifying as executor or applying for an order of inventory, or in any manner showing to the court the amount of the indebtedness of the succession ; without tendering any security to creditors or deferring his application for a reasonable time within which creditors might, should they desire, demand of him security, or heirs might contest the validity of the will, or any of its provisions, or the sufficiency of the testimony of its probate—proceedings not only usual, but, as to most of them, essential prerequisites to any demand by a testamentary heir or universal legatee to be put in possession of an estate ; yet, notwithstanding this, said defendant, on the said 15th July, by representing to the court that the testatrix left no forced heirs and owed no considerable debt, that he was willing to accept and take the succession pure and simple, and that in his opinion 'there is no necessity of further administration,' obtained an order, 'That, as the sole and universal legatee of the late Sarah Ann Dorsey, petitioner, Jefferson Davis, be put in possession of all the property, real, personal, and mixed, left by her and wherever situated.'

"That by said proceedings and decrees said Second District Court ceased to have jurisdiction over or regarding the administration of said succession, and, owing to his citizenship and the limited jurisdiction of said court, defendant in the premises ceased to be in any manner further amenable or subject to its jurisdiction.

"That, although said proceedings and decrees, as your orators are advised, are not *res adjudicata* against them, yet, nevertheless, in virtue thereof, said will and its order of probate are and will remain a muniment of title in defendant to all and singular the estate of said Sarah Ann Dorsey so long as said will and order of probate shall remain unannulled and unrevoked through judicial proceedings had contradictorily with said defendant."

And it is further alleged that this decree of probate was unadvisedly rendered and should be revoked, cancelled, and recalled, for the reasons rendering said will, of which it is the probate, null and void, and because the testimony given in support of the probate was false and erroneous, and because, even if uncontradicted, it would be insufficient.

It is further charged in the bill, that the defendant also claims title to the estate in Mississippi called "Beauvoir," by virtue of a sale to him of said property and a conveyance thereof made by Sarah Ann Dorsey February 19th, 1879, a copy of which is set out, which the applicants aver, however, to be null and void, for the same reasons on which they allege the will to be void, and because at the time the defendant occupied towards the said Sarah Ann Dorsey such a relation of trust and confidence, as that he had no right to purchase the property, and that his consent to the sale thereof to himself, without security for the payment of the price, which was below its value, was a violation of his trust, for which reasons, it is claimed, said sale should be cancelled and annulled.

It is also alleged in the bill, " that, owing to the complicated character of the said agency thus held by defendant, an account thereof, as herein demanded, cannot properly be taken except in a court of equity."

The prayer of the bill is as follows:

"And that it may be decreed that the said alleged will of the said Sarah Ann Dorsey, dated 'Beauvoir, Harrison County, Mississippi, January 4, 1878, and filed in the Second District Court for the parish of Orleans in the record of her succession under No. 41,376 of the docket, on the 15th July, 1879, be cancelled and annulled as absolutely void and of no effect in law ; and that the decree of probate of said alleged will, and the decree recognizing said defendant to be the sole and universal legatee of said Sarah Ann Dorsey, and as such ordered to be put in possession of all the property left by her, wherever situated, both rendered on said 15th July, 1879, and in extenso set forth in Exhibit B, be revoked, cancelled, and recalled as absolutely void and of no effect in law; and that the alleged sale and conveyance of property situate in Harrison County, Mississippi, by said Mrs. Dorsey to defendant, on the 19th February, 1879, and in extenso set forth in Exhibit C, be cancelled and annulled as absolutely void and of no effect in law, in so far as either said will, decree of probate, decree of possession, or sale, in any manner to be pleaded by defendant as recognizing him as testamentary heir and universal legatee of said Sarah Ann Dorsey, or as a muniment of title or legal bar against

your orators or their coheirs as her legal and sole heirs, and as such entitled to the ownership and possession of all and singular the property belonging to her estate, and which in any manner has come into the possession of said defendant, either as agent or trustee.

"And that it be further decreed that said defendant come to a full and fair account of all and singular his acts and doings of his agency under the said act of procuration of May 10th, 1878 ; and that it be decreed the defendant furnish to this honorable court a full and detailed statement of all properties, real and personal, of said Sarah Ann Dorsey, which came into his possession or under his control and management as her agent, or of which he has taken possession under and by virtue of said alleged will or said decrees of the Second District Court of July 15th, 1879, or said alleged sale of February 19th, 1879.

"And that it be further decreed that said defendant at once surrender unto your orators, and, if so desired by them, jointly with their coheirs, the possession of all said property, including all books, papers, evidences, title-deeds, &c., which, belonging to said estate, at any time since May 10th, 1878, has come into his possession.

"And that defendant be perpetually enjoined and restrained by the decree of this court from setting up or pleading said alleged will, said decree of probate, said decree of possession, and said act of sale, or any title, right, or claim thereunder, against your orators as next of kin and legal heirs of said Mrs. Sarah Ann Dorsey.

"And that it be further decreed that defendant make a full and true discovery and disclosure of and concerning all and singular the transactions and matters appertaining to or connected with his said agency, as well during the lifetime as since the death of his principal. And that defendant may be decreed to come to an account with your orators, to be taken by and under the direction and decree of this honorable court, of all his dealings and transactions under the agency assumed by him under the act of procuration of May 10th, 1878, or as trustee since Mrs. Dorsey's death, and to pay over to your orators what shall be found due to them by defendant upon the taking of said account."

To this bill the defendant below filed a demurrer, which de-

murrer was sustained and a decree rendered dismissing the bill without prejudice, to reverse which this appeal is prosecuted.

One of the main objects of this bill is to obtain from the defendant an account of the rents and profits received by him of the estate formerly belonging to Sarah Ann Dorsey, and, in order thereto, a declaration that the legal title to that estate is vested in them as her heirs at law and next of kin, in a decree that the alleged will under which the defendant claims, and the probate thereof, are null and void. It is admitted that the defendant is in possession, and that he holds adversely to the appellants; and there is a prayer in the bill for a recovery of the possession. In no respect does it differ from the frame of the bill in *Hipp* v. *Babin*, 19 Howard, 271.

In that case the complainants sought by a bill in equity to recover possession of real estate to which they claimed title, as against a judicial sale, alleged to be void as against them, under which the defendants were in possession, and also for an account of rents and profits. The court refused to entertain the prayer for the recovery of the possession, on the ground that the remedy of the complainants at law was plain and adequate. It was urged that the bill would, nevertheless, lie for the account. To this Mr. Justice Campbell, delivering the opinion of the court, replied as follows:

" Nor can the court retain the bill under an impression that a court of chancery is better adapted for the adjustment of the account for rents, profits, and improvements. The rule of the court is, that when a suit for the recovery of the possession can be properly brought in a court of equity, and a decree is given, that court will direct an account as an incident in the cause. But when a party has a right to a possession which he can enforce at law, his right to the rents and profits is also a legal right, and must be enforced in the same jurisdiction. The instances where bills for an account of rents and profits have been maintained are those in which special grounds have been stated to show that courts of law could not give a plain, adequate, and complete remedy. No instances exist where a person who had been successful at law has been allowed to file a bill for an account of rents and profits during the tortious possession held against him; or in which the complex-

ity of the account has afforded a moti- r- ror the interposition of a court of chancery to decide the title and to adjust the account." ·

This case was cited and its doctrine approved and applied in the recent case of *Root* v. *Railway Co.*, 105 U. S. 189–212.

In the present bill no circumstances are alleged to except the case from the general rule. The defendant did not sustain towards the complamants at any time any relation of trust and confidence; he was not their agent; and any right which they can assert against him for the rents and profits of the estate is altogether dependent upon their title to that estate, and cannot arise until that has been established. The title which they assert to that is not an equitable, but a legal title, as heirs at law and next of kin of Sarah Ann Dorsey, and is to be established and enforced by a direct proceeding at law for the recovery of the possession which they allege the appellee illegally withholds. There is no ground, therefore, on which the bill can be supported for the account as prayed for.

It is contended, however, for. the appellants that the bill ought to have been maintained, for the purpose of decreeing the invalidity of the will of Mrs. Dorsey and annulling the probate, so far at least as it gave effect to the will as a muniment of title.

It is well settled that no such jurisdiction belongs to the circuit courts of the United States, as courts of equity; for courts of equity, as such, by virtue of their general authority to enforce equitable rights and remedies, do not administer relief in such cases. The question in this aspect was thoroughly considered and finally settled by the decision of this court in the case of *Broderick's Will*, 21 Wall. 503. It was elaborately considered and finally determined in England by the House of Lords in the case of *Allen* v. *McPherson*, 1 House of Lords' Cas. 191. In that country, it was undoubtedly the practice of the courts of chancery to entertain bills to perpetuate the testimony of the witnesses to a will devising lands, at the suit of the devisee against the heir at law, it being alleged that the latter disputed its validity; and this, as Blackstone says, 3 Bl. Com. 450, " is what is usually meant in proving a will in chan-

cery." It is also true, that a bill in equity, in the nature of a bill of peace, or *quia timet,* would lie at the suit of a devisee against the heir at law, in which the validity of the will having been sustained by the verdict of a jury on the trial of an issue, *devisavit vel non,* a decree might be passed establishing the will and the title of the devisee under it, and perpetually enjoining the heir at law from setting up any claim of title against it. Story on Equity Jurisprudence, § 1447. The heir at law, it was formerly held, was not entitled to file such a bill, for he could bring his action of ejectment, and thus had his remedy at law; although such a bill would be entertained, if not objected to, or if there were any impediments to the proper trial of the merits on such an action. *Bootle* v. *Blundell,* 19 Ves. Jr. Ch. R. 494. The modern rule is " that the usual and generally more convenient practice is to enable the heir to proceed by ejectment, but that it is open to the court to direct an issue, if from any cause that course appears desirable." *Boyse* v. *Rossborough,* 6 House of Lords' Cas. 1–42. The manifest ground on which courts of equity in England proceeded, in declining the jurisdiction in question was, that as to wills of personalty, the jurisdiction of courts of probate was exclusive, and that as to devises, the remedy at law was plain, adequate, and complete. In this country, from a time anterior to the adoption of the Constitution, the same distinction of jurisdiction has existed, all probate and testamentary matters having been confided either to separate courts of probate, under different denominations, or a special jurisdiction over them having been vested in courts having jurisdiction also over other subjects. For reasons growing out of our policy, which subjected real estate equally with personalty to the payment of debts, and in other respects freed it from feudal fetters, the probate jurisdiction was extended, but with varying effect in different States, over wills of land, as well as of personal chattels; preserving, however, in some form, the rights and remedies of heirs at law to contest their validity. But it was almost universally recognized that no will could have effect, for any purpose, until admitted to probate and record by the local authority, although in some States, while the original probate was conclusive until set aside, for all pur-

poses and as to all persons, in others it was conclusive, while in force at all, only as to personalty and for the purposes of administration, and not as a muniment of title as to devises. In States where it is held to have a conclusive force, formal modes are prescribed of contesting the validity of the instrument as a will, and of the regularity and legality of the probate, by suits regularly instituted solely for that purpose, and *inter partes;* but such proceedings are generally regarded as the exercise of probate jurisdiction, even if administered in courts other than that of original probate, but the judgment, as in other cases *inter partes,* binds only parties and privies. In those States where the probate, although conclusive while in force as to personalty and for the purposes of administration merely, is only *prima facie* evidence where the will is relied on as a muniment of title to real estate, its validity may become a question to be tried whenever and wherever a litigation arises concerning real property, the title to which is affected by it, just as in England, in actions of ejectment between the heir and the devisee, or those claiming through them. In a State, of which New York is an example, where, by its law, its own courts of general civil jurisdiction are authorized thus incidentally and collaterally to try and determine the question of the validity of a will and its probate in a suit involving the title to real property, there can be no question but that the circuit courts of the United States might have jurisdiction of such a suit by reason of the citizenship of the parties, and in exercising it would be authorized and required to determine, as a court administering the law of that State, the same questions. And where provision is made by the laws of a State, as is the case in many, for trying the question of the validity of a will already admitted to probate, by a litigation between parties in which that is the sole question, with the effect, if the judgment shall be in the negative, of rendering the probate void for all purposes as between the parties and those in privity with them, it may be that the courts of the United States have jurisdiction, under existing provisions of law, to administer the remedy and establish the right in a case where the controversy is wholly between citizens of different States. The judicial power of the

United States extends, by the terms of the Constitution, "to controversies between citizens of different States;" and on the supposition, which is not admitted, that this embraces only such as arise in cases "in law and equity," it does not necessarily exclude those which may involve the exercise of jurisdiction in reference to the proof of validity of wills. The original probate, of course, is mere matter of State regulation, and depends entirely upon the local law; for it is that law which confers the power of making wills, and prescribes the conditions upon which alone they may take effect; and as, by the law in almost all the States, no instrument can be effective as a will until proved, no rights in relation to it, capable of being contested between parties, can arise until preliminary probate has been first made. Jurisdiction as to wills, and their probate as such, is neither included in nor excepted out of the grant of judicial power to the courts of the United States. So far as it is *ex parte* and merely administrative, it is not conferred, and it cannot be exercised by them at all until, in a case at law or in equity, its exercise becomes necessary to settle a controversy of which a court of the United States may take cognizance by reason of the citizenship of the parties. It has often been decided by this court that the terms "law" and "equity," as used in the Constitution, although intended to mark and fix the distinction between the two systems of jurisprudence as known and practised at the time of its adoption, do not restrict the jurisdiction conferred by it to the very rights and remedies then recognized and employed, but embrace as well not only rights newly created by statutes of the States, as in cases of actions for the loss occasioned to survivors by the death of a person caused by the wrongful act, neglect, or default of another (*Railway Co.* v. *Whitton*, 13 Wall. 270, 287; *Dennick* v. *Railroad Co.*, 103 U. S. 11), but new forms of remedies to be administered in the courts of the United States, according to the nature of the case, so as to save to suitors the right of trial by jury in cases in which they are entitled to it, according to the course and analogy of the common law. *Ex parte Boyd*, 105 U. S. 647; *Boom Co.* v. *Patterson*, 98 U. S. 403.

In *Hyde* v. *Stone*, 20 How. 170–175, it was said by Mr.

Justice Campbell, delivering its opinion, that "the court has repeatedly decided that the jurisdiction of the courts of the United States over controversies between citizens of different States cannot be impaired by the laws of the States, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power."

In *Payne* v. *Hook*, 7 Wall. 425, it was decided that the jurisdiction of the circuit court of the United States, in a case for equitable relief, was not excluded because, by the laws of the State, the matter was within the exclusive jurisdiction of its probate courts; but, as in all other cases of conflict between jurisdictions of independent and concurrent authority, that which has first acquired possession of the *res*, which is the subject of the litigation, is entitled to administer to it. *Williams* v. *Benedict*, 8 How. 107; *Bank of Tennessee* v. *Horn*, 17 How. 157; *Yonley* v. *Lavender*, 21 Wall. 276; *Taylor* v. *Carryl*, 20 How. 583; *Freeman* v. *Howe*, 24 How. 150; *Hook* v. *Payne*, 450; 14 Wall. 252.

It was said by this court in *Gaines* v. *Fuentes*, 92 U. S. 10–18, Mr. Justice Field delivering its opinion, that

"The Constitution imposes no limitation upon the class of cases involving controversies between citizens of different States, to which the judicial power of the United States may be extended; and Congress may, therefore, lawfully provide for bringing, at the option of either of the parties, all such controversies within the jurisdiction of the federal judiciary."

And, referring to the nature of suits which, as in that case, sought to annul the probate of a will and adjudge it to be invalid, the court further said (p. 20):

"And if by the law obtaining in the State, customary or statutory, they can be maintained in a State court, whatever designation that court may bear, we think they may be maintained by original process in a federal court, where the parties are, on the one side, citizens of Louisiana, and, on the other, citizens of other States."

As that was a case in which the sole question decided was

the right of the defendant to remove the cause from the State court to the Circuit Court of the United States, under the act of March 2d, 1876, 14 Stat. 558, it was assumed, and not decided, that the said suit brought in the State court was one which, under the laws of the State, its courts were authorized to entertain for the purpose of granting the relief prayed for. The point decided was, that if it were it might properly be transferred to a court of the United States.

It remains, therefore, in the present case to inquire whether the complainants are entitled, under the laws of Louisiana, to draw in question, in this mode and with a view to the decree sought, the validity of the will of Sarah Ann Dorsey and the integrity of its probate.

An examination of the decisions of the Supreme Court of Louisiana on the subject will disclose that a distinction is made in reference to proceedings to annul a will and its probate, according to the objects to be accomplished by the judgment and the relation of the parties to the subject. If the administration of the succession is incomplete and *in fieri*, and the object is to alter or affect its course, the application must be made to the court of probates, which, in that case, has possession of the subject and exclusive jurisdiction over it. If, on the other hand, the succession has been closed, or has proceeded so far that the parties entitled under the will have been put in possession of their rights to the estate, then the resort of adverse claimants must be to an action of revendication in the courts of general jurisdiction, in which the legal title is asserted as against the will claimed to be invalid, making an issue involving that question.

In *O'Donogan* v. *Knox*, 11 La. 384, the Supreme Court of Louisiana said:

" It appears then that the jurisdiction of the courts of probate is limited to claims against successions for money, and that all claims for real property appertain to the ordinary tribunals, and are denied to courts of probate. The plaintiff in this case was therefore compelled, in suing for the property of the succession, to seek redress in the district court, and whether she attacked the will, or

the defendant set it up as his title to the property, the court having the cognizance of the subject must of necessity examine into its legal effect. And although the will may have been admitted to probate and an order given for its execution, yet these are only preliminary proceedings necessary for the administration of the estate, and not a judgment binding on those who are not parties to them. When, therefore, in an action of revendication a testament with probate becomes a subject of controversy, it will surely not be contended that a court of ordinary jurisdiction, having cognizance of the principal matter, shall suspend its proceedings until another court of limited power shall pronounce upon the subject; for in that case the ordinary courts would submit to another tribunal the decision of the main question in the cause, without right of trial by jury, and would have little else to do than to comply with its decree."

In *Robert* v. *Allier's Agent*, 17 La. 4, the same court said:

" On the question of jurisdiction arising from the state of the case we understand the distinction repeatedly made by this court to be that whenever the validity or legality of a will is attacked and put at issue (as in the present case) at the time that an order for its execution is applied for, or after it has been regularly probated and ordered to be executed, but previous to the heirs or legatees coming into possession of the estate under it, courts of probate alone have jurisdiction to declare it void, or to say that it shall not be executed. This is the purport and extent of the decision in the case of *Lewis' Heirs* v. *His Executors*, 5 La. 387; C. of Pr., Art. 924, § 1. But when an action of revendication is instituted by an heir at law against the testamentary heir or universal legatee, who has been put in possession of the estate, and who sets up the will as his title to the property, district courts are the proper tribunals in which such suits must be brought. 6 Martin's N. S. 263; 2 La. Rep. 23; 11 La. Rep. 388."

In *Rachal* v. *Rachal*, 1 Rob. (La.) 115, it is also said:

"We cannot consider the question of jurisdiction as an open one. The doctrine is now well settled that in a suit for property, whether the plaintiff attacks the will under which it is held or the defendant sets it up as his title to the property claimed, the

courts of ordinary jurisdiction before whom the principal matter, to wit, the action of revendication, is brought, must of necessity pronounce on the validity of the will which is thus drawn in question. The proceedings had in the court of probate for the settlement of the estate, such as the probate of the will and the order given for its execution, cannot have the effect contended for by the appellant ; they cannot be considered as a judgment binding on the plaintiffs, who were not parties to them."

In *Succession of Duplessis*, 10 Rob. (La.) 193, it is said :

" This court has often held that the admission of a will to probate, and the order given for its execution, are only preliminary proceedings necessary for the administration of the estate, and do not amount to a judgment binding on those who are not parties thereto."

To the same effect are *Succession of Dupuy*, 4 La. Ann. 570 ; *Sophie* v. *Duplessis*, 2 La. Ann. 724; *Abston* v. *Abston*, 15 La. Ann. 137.

In *Sharp* v. *Knox*, 2 La. 23, it was said :

"The petitioner himself shows that the defendant holds the property claimed from him under a will and confirmatory act, which she seeks to set aside. This she cannot effect except in a court of ordinary jurisdiction, *i.e.*, in the district court."

In *Hoover's Succession* v. *York*, 30 La. Ann. 752, the suit was simply to annul a will and the probate of a will, and to have certain persons plaintiff declared heirs and entitled to take as such. This, it was declared, was purely a probate proceeding, and cognizable alone by the parish court in which the succession was opened. " It was a matter incidental to the opening and settlement of the succession."

And the same principle governed the decision in *Blasini* v. *Blasini's Succession*, 30 La. Ann. 1388. That was an application in the probate court on the part of forced heirs, demanding that their rights as such, known under the law of Louisiana as their *légitime*, of which their ancestor could not deprive them by his testament, should be recognized, so that they might

receive their share of the succession. The effect of allowing it would be not to annul or invalidate the will, but merely to displace it, in the administration of the succession, to the extent required by their indefeasible interest in it. It was objected to the jurisdiction of the court that the succession had been closed by a previous judgment sending the widow and testamentary heir into possession; but the exception was overruled on the ground that the suit was of probate jurisdiction.

In *Gibson* v. *Dooley*, 32 La. Ann. 959, an action to annul a will, it was held, might be brought in the parish court, although the succession had been closed by a delivery of the property to the instituted heir. The rule, as laid down in *Robert* v. *Allier*, 17 La. 15, was cited and approved, but was held not to apply.

The reason was given in these words:

"Here no action of revendication was instituted, but simply a suit for the nullity of the will. There is no prayer for ejectment or that plaintiffs may be put into or quieted in their possession of property claimed under the will."

By the law of Louisiana, C. of Pr., art. 4, a real action is given, which relates to claims made on immovable property, or to the immovable rights to which they are subjected, the object of which is the ownership or the possession of such property, and, when prosecuted by one having the title against the person in possession, is called the petitory action, and is the proper action for the recovery of an universality of things, such as an inheritance. C. of Pr., art. 12. It is an action of revendication, C. of Pr., art. 43, and is the proper one to be brought for the purpose of asserting the legal title and consequent right of possession of the heir at law to the succession, when another is in possession under claim of title by virtue of a will admitted to probate, as is abundantly shown by the citations already made from the decisions of the Supreme Court of Louisiana. We entertain no doubt that this action can be brought in a proper case as to parties in the circuit court of the United States.

The Louisiana Code of Practice, art. 556, *et seq.*, provides for

an action of nullity, whereby definite judgments may be revised, set aside, or reversed, which may proceed either on the ground of vices of form or upon the merits, as that the judgment was obtained through fraud, and is a separate action, commenced by petition, the adverse parties being cited as in other suits. This action, with reference to the jurisdiction of the courts of the United States, was the subject of consideration in *Barrow* v. *Hunton*, 99 U. S. 80; but the present is not an action of that description, for the relief prayed for is recovery of the possession of the inheritance, which, we have seen, must be prosecuted in an action of revendication. Whether the probate of a will is a definite judgment which can be the subject of an action of nullity under these provisions of the Code of Practice, is a question, therefore, which we are not called upon to discuss or decide. The case of *Gaines* v. *Fuentes*, 92 U. S. 10, was such an action of nullity, but, as before remarked, the point decided in that case was not that it would lie, according to the law of Louisiana, but that if it would lie in the State court it was removable to the circuit court of the United States, because it presented a controversy wholly between citizens of different States.

The present suit is not an action of nullity, because it prays for the recovery of possession of the inheritance, to which the appellants claim the legal title as heirs at law of Sarah Ann Dorsey. That claim, as has been shown, is properly the subject of an action of revendication, which furnishes a plain, adequate and complete remedy at law, and consequently constitutes a bar to the prosecution of a bill in chancery.

There is nothing left, therefore, as a ground of support for the present bill, except so much of the case made by it as rests upon the prayer for the cancellation of the sale and conveyance of the Beauvoir estate by Mrs. Dorsey in her lifetime. That relief is claimed in part on the ground of a constructive fraud, growing out of the defendant's relation to her at the time as a confidential agent; but we see nothing in the circumstances as detailed to forbid such a transaction between the parties, and the charges of actual fraud and undue influence applicable to this sale, considered as detached from the rest of

the case, are not of such character, even when admitted by the demurrer, as in law would justify a recission. And as the case for relief as to this sale is not made independently, but only as part of the whole case intended to be presented by the bill, we conclude that it must fail with the rest.

The demurrer was rightly sustained and the bill properly dismissed.

*The decree is affirmed.*