64 P.(2d) 1300

## In re MORROW'S WILL.

### No. 4252.

Supreme Court of New Mexico.

Feb. 16, 1937.

Hugo Seaberg, of Raton, and Reid & Iden, of Albuquerque, for appellants.

Crampton & Robertson, F. S. Merriau, and Fred C. Stringfellow, all of Raton, for appellees.

PER CURIAM.

The original opinion is withdrawn and the following substituted.

BRICE, Justice.

This is an appeal from a judgment of the district court dismissing a proceeding to contest the last will and testament of Mary J. Morrow, deceased. A motion has been filed to dismiss the case from this court upon the grounds: "That the judgment from which this appeal was taken is not appealable, and that this court is without jurisdiction to review said judgment on appeal because the proceeding in the District Court and in which said judgment was rendered is a statutory proceeding to contest a will. There is no provision, either constitutional, statutory, or by rule of court, granting the right of appeal to this court from a judgment rendered in a district court in such a proceeding. The general statute concerning appeals (Compilation of 1929, Section 105-2501) relates only to 'civil actions.' A proceeding to contest a will is a special statutory proceeding and not a 'civil action.' Hence no right of appeal exists."

The Constitution of New Mexico created this court with general appellate jurisdiction, but left to the Legislature the authority to provide for the exercise of such jurisdiction through proceedings by appeal or error. State v. Chacon, 19 N.M. 456, 145 P. 125. No statute has ever been enacted specifically allowing appeals from judgments of the district court in cases appealed to it from the probate court.

Section 1, Rule V, of this court is as follows: "Within three months from the entry of any final judgment in any civil action, any party aggrieved may appeal therefrom to the Supreme Court."

This rule amended section 105-2501, C. L.1929, which is as follows: "Within six months from the entry of any final judgment in any civil action, any party aggrieved may appeal therefrom to the supreme court of the state."

The contention is that this case is not a "civil action" within the meaning of the rule and statute, but is a "special proceeding" and that, as no provision has been made by the Constitution, any rule or statute permitting appeals generally in "special proceedings," or specially in proceedings to contest wills, that such cases are not appealable.

That a code of civil procedure was enacted in 1897 (chapter 73, N.M.Sess.Laws, 1897) applying solely to actions originally filed in the district court in conformity to the procedure therein prescribed in which provision is made for their appeal, but which does not apply to appeals from judgments of the district court entered in proceedings to contest a will, or any other

case not coming within the definition of "civil action" in section 1 of the said code.

We will consider the latter contention first, in which, if movant is correct, this court and the Supreme Court of the Territory were without jurisdiction to hear a large per cent. of cases determined by them and recognized from 50 to 75 years as appealable.

Section 105-2501, Comp.St.1929, which was amended by section 1 of Rule V of this court, both previously quoted herein, was section 1 of chapter 43, N.M.Sess. Laws 1917, entitled "An Act Providing Appellate Procedure in Civil and Criminal Cases," etc., and not limited in its scope to "civil cases," as defined by section 105-101, Comp.St.1929. More will be said of this act later: But as property rights may be involved we have concluded to review the law, with reference to the right of appeal to the Supreme Court of the territory and this court, from the adoption of the code in 1897 to this date.

A history of the statutes authorizing appeals to this court, from the adoption of the Kearny Code to that of section 1 of rule V of this court, will throw some light on the question.

Statutes substantially like section 1 of rule V of this court, and section 105-2501, Comp.St.1929, which we have quoted, have been in force in the territory and this state since the adoption of the Kearny Code in 1846, Courts and Judicial Powers, section 9 (see Comp.Laws 1884, p. 94) of which is: "Every person aggrieved by any judg-

ment or decision of any circuit court [district court], in any civil case, may make his appeal to the superior court [Supreme Court]."

The first provision enacted by the territorial Legislature for reviewing cases by the Supreme Court, through either appeals or writs of error, at the election of appellants, is section 1 of chapter 10, N.M. Sess.Laws of 1880 (section 2193, C.L. 1884), which is: "(1) All causes, either in law or equity, finally adjudged or determined in the district courts, may be removed into the supreme court of the Territory for review, either by appeal or writ of error."

The Legislature by section 5 of chapter 66, N.M.Sess.Laws 1891, enacted: "Appeals in equity cases and writs of error in common law cases may be taken at any time within one year from the date of the rendition of final decrees or judgments."

By chapter 73, N.M.Sess.Laws 1897, the code system of pleading was adopted, most of which is the law today. Section 1 of this act is: "There shall be in this Territory but one form of action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be denominated a civil action, and the party thereto complaining shall be known as the plaintiff, and the adverse party as the defendant."

Section 161 of the act is: "Any person aggrieved by any final judgment or decision of any district court in any civil cause, may, at his election, take an ap-

peal or sue out a writ of error to the supreme court of the Territory at any time within twelve months after entry of the same."

Section 1 of the Code of Civil Procedure as adopted in 1896 has never been changed and now appears as section 105-101, C.L. 1929, but section 161 has gone through the following changes:

Section 1, chapter 82, Sess.Laws 1901, provided for appeals and writs of error to review all district court judgments, including those brought to the district court from the probate court or justice of peace court. Also those rendered in special proceedings or upon summary applications and for appeal from certain interlocutory orders and judgments. This act violated the Organic Act and was repealed at the next session by chapter 26, N.M.Sess.Laws 1903. Jung v. Myer, 11 N.M. 378, 68 P. 933.

Here it is well to call attention to a provision in the Act of Congress approved September 30, 1850, establishing the Territory of New Mexico, generally referred to as the "Organic Act," which provided among other things: "Writs of error, bills of exception, and appeals, shall be allowed in all cases from the final decisions of said district courts to the supreme court, under such regulations as may be prescribed by law." Organic Act, § 10.

This was re-enacted by Congress by an Act of April 7, 1874, 18 Stat. 27, and remained in effect until statehood. The Legislature of New Mexico enacted laws in 1862 (Act of January 30, 1862) which ap-pear at pages 110 and 176, C.L.1865, section 13 of which is as follows: "Whenever any suit shall be brought before any judge of probate of this territory in accordance with the power granted by the laws now in force, to said courts and the same shall not be settled and either of the parties shall desire to take an appeal the judge of probate shall grant the same in conformity with the provisions of an act approved February 2, 1860, to the District Court to render final judgment thereon without any further recourse or appeal."

This section of the law does not appear in the Compilations of 1884, and in searching we find printed under the title "List of Laws Enacted by the Legislative Assemblies of the Territory of New Mexico since 1865, including the Revised Statutes of that Year," appearing on page 1399, C.L.1884, the following: "16. *District courts.*—All compiled except section 13, invalid by reason of supreme court decision as to probate courts."

We do not find the decision which held this section invalid, but this is not surprising, as many of the early decisions of the territorial Supreme Court were lost or destroyed. Only about eighty of the opinions written prior to 1880 now exist. The act is clearly in contravention of the provision of the Organic Act, in that it specifially prohibited appeals of probate cases to the Supreme Court, whereas the Organic Act provided that appeals could be taken in all cases from the final decision of the district court. The Legislature was

authorized to provide the regulations, but could not extend or abridge the right granted to take appeals or writs of error in all cases from such final judgments. In Re Attorney General, 2 N.M. 49, it was held: "In a territory the constitution and laws of the United States, and especially the organic act of the territory itself, stand exactly in the relation that a state constitution occupies in a state." .

The same question was before the territorial Supreme Court in Jung v. Myer, 11 N.M. 378, 68 P. 933, 934, in which it was held that an act of the Legislature authorizing appeals from certain interlocutory orders was void in that it violated section 10 of the Organic Act which we have quoted. After quoting this provision of the Organic Act, that court said:

"These provisions are limitations on the appellate jurisdiction of this court, and must be considered in connection with the legislative power and authority granted by the organic act (section 7), which are as follows:

" 'That the legislative power of the territory, shall extend to all rightful subjects of legislation, consistent with the constitution of the United States and the provisions of this act.'

"The language used in the organic act (section 10) regulating writs of error, bills of exception, and appeals, is clear and specific. It provides that they 'shall be allowed in all cases from the final decision of said district courts to the supreme court, under such regulations as may be prescribed by law.'

"The supreme court derives its appellate jurisdiction from the organic act, and by the terms of the act itself it has no appellate jurisdiction except from final decisions of the district courts. * * *

"It will be seen from these quotations from the organic act that the jurisdiction of the supreme and district courts has been specifically defined,—first, that they shall possess chancery and common-law jurisdiction, and that the supreme court shall have appellate jurisdiction, and that writs of error, bills of exception, and appeals shall be allowed in all cases from the final decisions of the district courts to the supreme court. It will be observed that the procedure by which writs of error, bills of exception, and appeals are perfected is left to the legislative assembly by the use of the words 'under such regulations as may be prescribed by law.' It is only the regulation of procedure that is delegated to the legislative assembly, whereas the words used in connection with the jurisdiction of the several courts are of an entirely different purport."

To relieve the effect of the decision of the Territorial Court in Kidder v. Bennett et al., 2 N.M. 37, holding that section 10 of the Organic Act, supra, did not authorize writs of error in chancery cases, the Legislature enacted section 1 of chapter 10, N.M.Sess.Laws 1880 (C.L. 1884, § 2193), supra; Farish et al. v. New Mexico Mining Co., 5 N.M. 234, 21 P. 82. There-

after, and until the enactment of chapter 77, N.M.Sess.Laws 1915, appeals and writs of error were provided for in the same section of the law, each of equal efficacy; but by that act and all amendments they have been separated, and some distinction may be noted in the respective provisions of the statutes relating thereto. The Code of Civil Procedure was not intended to cover all civil cases, as will be seen by reference to sections 105-1003 and 105-1007, C.L.1929, which are as follows:

"The provisions of this chapter shall not apply to or in any wise affect proceedings for habeas corpus, mandamus, prohibition, quo warranto, proceedings in assignment as covered by chapter VII (7-101 et seq.), proceedings for condemnation and eminent domain; but this chapter shall affect and control the procedure in all other civil actions in the district courts in this state." Section 105-1003, C.L.1929.

"The former practice in law and equity shall be retained in all cases and proceedings not comprehended within the terms and intent of this chapter." Section 105-1007, C.L.1929.

The substance of section 9 of the Kearny Code was re-enacted a number of times. See section 1, chapter 57, N.M.Sess.Laws 1907; section 1, chapter 77, N.M.Sess. Laws 1915; section 1, chapter 43, N.M. Sess.Laws 1917; section 1, rule V, Rules of the Supreme Court.

The statutory law involved (also section 1 of Rule V of this court) is exactly the same so far as the issue here is concerned as before statehood, unless it may be said that section 10 of the Organic Act died with the territory, which may be doubted in view of section 105-1007, C.L.1929, just quoted. This section of the Organic Act, while not self-executing, yet provided what cases could be appealed to the Supreme Court. The Legislature might refuse to act but, if it did, it could provide only the regulations whereby appeals, etc., could be prosecuted "in all cases" from final decisions of the district courts. It could neither extend nor abridge the right but was confined to providing the regulations for its exercise. Jung v. Myer, 11 N.M. 378, 68 P. 933.

We may confidently assume that the Territorial Legislature did not intend, by enacting section 161 of the Act of 1897, supra, to abridge the existing right of appeal in civil cases, for the very good reason it was beyond its power. The Organic Act had provided for appeals and writs of error, in all cases, from final decisions of the district court, and it thus remained, at least until statehood.

By section 161 appeal was allowed from any judgment or decision of the district court in any "civil cause," not "civil action," as defined by section 1 of the act in which the latter is given a special meaning much narrower than its general and ordinary meaning. But, if we assume that section 161 has reference to appeals from final judgments in "civil actions" as defined in section 1 of the Code, that is,

those originating in the district court by the filing of a complaint, and not all civil causes as understood in a legal sense, then we must construe with it sections 175 and 179 of the same act, still in substance a part of the Code, as follows: ·

"Sec. 175. This act shall not apply to, or in any wise affect proceeding for habeas corpus, mandamus, prohibition or quo warranto, · and shall not affect actions of replevin or writs of attachment, except as to the form of the action." See section 105-1003, Comp.St.1929.

"Sec. 179. The former practice in law ànd equity shall be retained in all cases and proceedings not comprehended within the terms and intent of this code." See section 105-1007, Comp.St.1929.

By section 175 it was provided that the Code did not apply to or affect certain proceedings specifically named therein, but that it should apply to all other "civil actions." As a case on appeal to the district court from a justice of the peace court (say to recover on a promissory note) is just as much a civil action as one begun by filing a complaint in the district court, it is evident that reference here is to the meaning of the term as used in section 1 of the act; for "all other civil actions" would include cases appealed from judgments of justice of the peace court.

Now, section 179 of the act just quoted is in the nature of a saving clause. It is not directed alone to the proceedings excluded from the operation of the Code by section 105-1003, Comp.St.1929; but to these, as well as all cases in which the right had theretofore existed, and not comprehended within the terms and intent of the Code; otherwise section 161 of the Code and subsequent territorial amendments were void, if we assume they applied only to cases originally filed in the district court and denominated "civil actions." We may assume that the sections of the Code mentioned, taken together, were intended to and did provide for appeals to the Supreme Court of the territory in all cases in which appeals were allowed by then existing laws, that is, in all cases · from final judgments of the district court, and we so hold.

■ We have mentioned the fact that section 1 of rule V of this court is an adaptation of section 1, chapter 43, N.M. Sess.Laws 1917, and never a part of the Code of Civil Procedure. That act was a code of appellate procedure for both civil and criminal cases, and by its terms repealed the portions of the old code that related to its subject. While the compilers of the 1929 statutes substituted a number of its provisions' (including section 1) in the place of corresponding repealed sections of the Code of Civil Procedure, as though they were amendments, no such substitution was authorized. The Code of Appellate Procedure as enacted in 1917 was intended to be complete within itself, and is the last act on the subject, as chapter 93, N.M.Sess.Laws 1927, made no change in that regard.

The case of State v. Chacon, 19 N.M. 456, 145 P. 125, 126, is cited by movants in support of their first contention, to wit, that the contest of a will under our statutes is a "special proceeding" and not a "civil action," and there is no authority for its appeal to this court. We quote the following from that case:

"Appeals are creatures of statute, and, when not guaranteed by constitutional provisions, or specifically provided for by statute, no power of review is afforded to a litigant in a cause determined by an inferior court. The Supreme Court of this state has only such jurisdiction as is conferred by the Constitution, and the laws of the state not in conflict therewith. * * *

"But nowhere is a right granted to litigants, by appeal, to avail themselves of the jurisdiction thus conferred upon the court. No procedure is provided by which such jurisdiction is to be invoked, and, as the right of appeal is purely statutory, it is clear that, notwithstanding the fact that a court is created with appellate jurisdiction over all final judgments, such jurisdiction may only be invoked pursuant to a statute conferring the right and prescribing the procedure. This being true, the Legislature may grant or withhold the right; it may grant the right in one class of cases and withhold it in another; it may confer the right of appeal from all judgments rendered upon indictments, and deny it to all other judgments."

Also a number of cases in which we have held that appeals to this court from judgments of the district court in "special proceedings" are not authorized by section 105-2501, Comp.St.1929, or section 1 of rule V of this court. One of these cases, State v. Rosenwald Bros. Co., 23 N.M. 578, 170 P. 42, 43, 45, is an appeal from a judgment in a proceeding to correct taxes by authority of a statute, a part of which is as follows: " '* * * If the treasurer shall discover any errors of other kinds, in said assessment book by which any injustice would be done to any taxpayer, it shall be his duty to report the same to the district attorney, and every taxpayer complaining of any such injustice may submit his complaint to the district attorney; and if the district attorney is satisfied that correction or change should be made so as to avoid injustice to the taxpayer, it shall be his duty to submit the matter to the district court and ask for an order of that court that such change or correction should be made, without cost to the taxpayer injuriously affected.' "

The question was whether an appeal was authorized. We said in part:

"The solution of the question of the right of the state to appeal in this proceeding depends upon a construction of section 1, c. 77, Laws 1915. That section provides that any party aggrieved in 'any civil action' may appeal to the Supreme Court. The section cited amended a portion of the act of 1907 concerning civil procedure. Chapter 57, Laws 1907. A

reasonably thorough investigation made by us discloses that a distinction is maintained by the courts between ordinary civil actions and special proceedings founded upon statute. It has been held that no appeal exists in the latter class of cases, unless the statute specifically grants the same, the courts or tribunals in such cases exercising special and limited jurisdiction. * * *

"No right is given to a taxpayer in this state to have a correction made in his assessment by application to the district court through the district attorney, except by statute. Unlike the ordinary civil action the matter is submitted to the court through the intervention of the district attorney, who must first be satisfied that the relief prayed for in the petition should be granted to avoid injustice to the petitioner. The proceeding is begun by petition, rather than by complaint. No process is served upon the state or any tax official. The court determines the right of the matter in an ex parte hearing. The order or judgment of the court operates upon an official not made a party to the proceeding. No issues are made upon the petition, and in all respects the proceeding is special in nature, the authority to proceed being derived wholly from statute. Although the proceeding is civil in its nature, as distinguished from criminal, it is not a civil action."

The question in Gonzales et al. v. Gallegos et al., 10 N.M. 372, 62 P. 1103, 1106, was whether the procedure provided for trying contested election cases should be strictly followed, and it was held that it must be; that the Code of Civil Procedure did not apply to such special proceedings. The territorial court said: "Thus it would seem clear that it was the intention of the legislature to limit the operation of the Code to the ordinary and usual actions known to the common law, and exclude from its operation all those extraordinary actions and proceedings, providing summary remedies wholly inconsistent with the liberal provisions of the code practice and the delay incident thereto. * * * The statutory proceeding for contesting elections is a comparatively recent and special proceeding of a necessarily summary nature. This proceeding, while in some respects it is similar to the action of quo warranto, does not supersede nor destroy that remedy. It is a contest between individuals, usually, in which the public may have little or no interest, but the public have the remedy of quo warranto, by which their rights may be adjudicated."

We have never held that the mere enactment of a more convenient procedure to enforce an existing right creates a "special proceeding." That would include our actions in ejectment, suits to quiet title, and even "civil actions" as defined by section 105-101, Comp.St.1929; all of which are special and unknown to the English law. This question was very definitely settled by this court in Blanchard v. State ex rel. Wallace, 29 N.M. 584, 224 P. 1047, 1048, a statutory proceeding to obtain custody of children under chapter 85,

N.M.Sess.Laws 1917 (section 22-101 et seq., Comp.St.1929), which provides for the care, custody, and control of dependent and neglected children. The jurisdiction of this court was questioned, as here. Speaking through Chief Justice Parker, we stated: "The first proposition put forward by the defendants in error in the briefs is to the effect that there is no right of review of a judgment of the character entered in these causes under the statute providing the procedure. It is urged that the proceeding is a special proceeding, and, there being no provision made in the statute for the review thereof by this court there is no right to be heard here. In this position, counsel are clearly in error. There was in England, prior to the American independence, a well-established doctrine in equity that courts of equity had jurisdiction over the care, custody, and control of infants and might entertain a proceeding to take such care, custody and control from either parents or guardians and place the same with other suitable persons. The American courts have inherited this jurisdiction, and it is here firmly established."

Our statutes providing for the contest of wills are a part of chapter 90 of N.M. Sess.Laws 1889, entitled "An Act to amend the laws relative to the estates of deceased persons" and have never been changed. The section material to this case is as follows: "When a will has been approved, any person interested may at any time within one year after such probate, contest the same or the validity of the will.

For that purpose he shall file in the court in which the will was proved, a petition in writing, containing his allegations against the validity of the will or against the sufficiency of the proof, and praying that the probate may be revoked." Section 154-211, Comp.St.1929.

The remaining provisions provide for process and service, the manner of trial, etc. These statutes are purely procedural and add nothing to the general law, to which we must look to determine the grounds upon which such contest can be invoked. Such laws are common among the American states and are effective in giving a convenient remedy to enforce rights within the English law; under which the validity of devises of real estate were generally contested in actions at law (though there are exceptions) and that of personal property in proceedings to probate in the ecclesiastical courts, which had no jurisdiction over devises of real estate. 2 Pomeroy, Eq. Jur. (3d Ed.) § 913, and English cases cited in notes; 1 Storey, Eq.Jur. (14th Ed.) § 579; Gaines v. Fuentes, 92 U.S. 10, 23 L.Ed. 524; Kieley v. McGlynn, 21 Wall. 503, 22 L.Ed. 599; Chilcote v. Hoffman, 97 Ohio St. 98, 119 N.E. 364, L.R.A.1918D, 575; 1 Page on Wills § 542; 28 R.C.L. § 405; 68 C.J. Title Wills, § 668; Newman v. Waterman et al., 63 Wis. 612, 23 N.W. 696, 53 Am.Rep. 310; 28 R.C.L. Title Wills, § 401.

With reference to proceedings in the English courts, see Ellis v. Davis, 109 U.S. 485, 3 S.Ct. 327, 332, 27 L.Ed. 1006.

There are a number of proceedings common to nearly all the states which have in effect simplified the procedure for enforcing ancient rights, such as ejectment, suits to quiet title, and contests of wills. All of these have been enacted as new remedies for the enforcement of rights recognized by the laws of England. The statutory action of ejectment created no new right but simplified the remedy, which, under the common law, was complicated and unsatisfactory. Likewise the statutory action to quiet title took the place of bills of peace and quia timet, as a much simpler procedure to effectuate the same purpose. The action authorized by statute to contest a will is likewise a new remedy for rights that existed under the English law as we have seen. In fact, our various codes of procedure have left but little, if any, of the ancient procedure of the English courts in this jurisdiction. By the process of time many of the rights as recognized by the English law have been modified by courts in the absence of statutes; but the modified right is none the less the subject of a "civil action," in contemplation of section 1 of rule V, supra. In Ormsby et al. v. Webb, 134 U.S. 47, 10 S.Ct. 478, 482, 33 L.Ed. 805, the Supreme Court, through Mr. Justice Harlan, reviewed the nature of such proceeding and determined that it was a "case" within the jurisdiction of the Supreme Court under the federal statute. The court stated:

"So that the only question is whether issues framed by the supreme court of the District, and which involve an inquiry as to whether the decedent was or was not incompetent, from unsoundness of mind or because of undue influence exerted upon him, to make a will,—issues to which there are adversary parties,—constitutes a 'case,' within the meaning of the act of congress defining the jurisdiction of this court over the final judgments and decrees of the court below. If it does not, then it would follow that a proceeding in the supreme court of the District to revoke the probate of a will is a 'case,' the final judgment in which, as held in Carter v. Cutting [8 Cranch, 251, 3 L.Ed. 553], may be reexamined by this court, when the value of the matter in dispute is sufficient; while a proceeding in the same court, involving the validity, as a last will and testament, of an instrument offered for probate, and therefore its admission to probate, is not a 'case,' the final judgment in which can be here reviewed. We cannot assent to this view. The latter proceeding is as much a 'case' as the former. One involves the validity of the probate of a will; the other, the validity as a will of a paper offered for probate. Upon the determination of each depend rights of property, and in each are adversary parties."

The relation of the Supreme Court of the United States to the appellate court of the District of Columbia in the matter of appeals is quite similar to that of this court to our district court; so that the Ormsby Case is much more in point than certain cases cited by appellee construing the provision of section 41 (1) of 28

U.S.C.A. (Judicial Code, § 24 (1), granting jurisdiction to the federal District Courts in "all suits of a civil nature, at common law or in equity * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and * * * is between citizens of different States." The federal courts have held consistently that this statute confers no jurisdiction over strictly probate matters. Broderick's Case, 21 Wall. 503, 22 L.Ed. 599; Atwood v. Rhode Island Hospital Trust Co. (C.C.A.) 34 F.(2d) 18; Ladd v. Tallman (C.C.A.) 59 F.(2d) 732; Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; O'-Callaghan v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 734, 50 L.Ed. 101.

It was held in the Sutton Case that the Supreme Court of Texas had established by repeated decisions that the state district courts had no jurisdiction to annul wills by original proceedings; that under the laws of Texas such proceedings were merely supplemental to the proceedings for the probate of wills and cognizable only by the probate courts; that, as the federal courts have no jurisdiction of strictly probate matters, the cause was not within the jurisdiction of the courts of the United States. It is held, however, that when independent proceedings to contest wills or their probate are authorized by statute, the United States courts have the same jurisdiction as state courts having such jurisdiction. Thompson v. Nichols (D.C.) 254 F. 973; Ellis v. Davis, supra; Gaines v. Fuentes, supra. Such proceedings then are "suits of a civil nature at common law or in equity," etc., according to federal decisions, and those courts have jurisdiction over contests of wills, if proceedings independent of probate proceedings are authorized by state statutes.

O'Callaghan v. O'Brien, supra, was an appeal to review a decree of the Circuit Court of Appeals which remanded, with instructions to dismiss, an action in equity instituted to set aside an order of a state probate court, probating a nuncupative will. The plaintiff below averred that the probate court was without jurisdiction to enter the order. The bill also prayed that the will be adjudged null and void. The Supreme Court of the United States deduced from the cases reviewed the following two propositions:

"First. That, as the authority to make wills is derived from the state, and the requirement of probate is but a regulation to make a will effective, matters of pure probate, in the strict sense of the words, are not within the jurisdiction of courts of the United States.

"Second. That where a state law, statutory or customary, gives to the citizens of the state, in an action or suit inter partes, the right to question at law the probate of a will or to assail probate in a suit in equity, the courts of the United States, in administering the rights of citizens of other states or aliens, will enforce such remedies."

It was held that the setting aside of the probate of a will was a continuation of the probate proceedings ancillary to the original probate. The court stated further: "Thus, if a state law provides for any form of notice on an application to probate a will, and authorizes a contest before the admission of the writing to probate, then it would follow, if the words 'suit or action of inter partes' embraces such a contest, the proof of wills, if contested by a citizen of another state or alien, would be cognizable in the courts of the United States, and hence not under the exclusive control of the state probate court. Again, if a state authorized a will to be proved in common form, that is, without notice, and allowed a supplementary probate proceeding by which the probate in common form could be contested, then, again, if such a contest be a suit inter partes, it would also be a Federal cognizance."

Thus it is, the federal courts hold a will contest becomes "a suit of a civil nature at common law or in equity," if a state statute provides for such contest independently of probate proceedings. The federal decisions do not turn upon any question regarding the object or purpose of the proceedings, but upon their character; whether a part of, or independent of, probate proceedings. The court in that case states the question in the following language: "This requires us to determine whether, by custom or by the statute law of the state of Washington, the courts of that state had the power of administering the relief prayed for on that subject in the bill by an independent suit, as distinguished from the exercise of probate jurisdiction originally or merely ancillary. There is no pretense of any custom in the state of Washington beyond the scope of authority conferred upon the courts of the state by the laws thereof. The question, therefore, reduces itself to a narrow compass; that is, what remedies do the laws of Washington create for the purpose of the probate of wills and the revocation of a probate, and are those remedies exclusively probate in their character or necessarily merely ancillary thereto, or do they confer upon the state courts general legal or equitable authority on the subject merely because of the existence of a controversy? That is to say, Is a will contest under the laws of Washington an ordinary action or suit between parties or a special probate proceeding directly ancillary to or concerning the probate of the will?"

Quite a bit is said in the opinion regarding the suit not being one inter partes; but we apprehend this would not be held fatal to jurisdiction if the statute provided for an independent proceeding in the state district court, though it should be otherwise identical with the present statute.

"The solution of the question is not free from complexities" as stated by Chief Justice White in the O'Callaghan Case; but the language of the statute and rule authorizing appeals has been, with some

variations, the law of the Territory or State for seventy-five years.

By long usage, and acquiescence on the part of the Legislature, the right of appeal in matters of probate and will contests have become so firmly established that such construction of the rule and statutes should not be disturbed unless a contrary meaning is so certain as to be practically without doubt; and we do not find it so.

We conclude that this court has jurisdiction on appeal from the judgment of the district court in this case; from which it follows that the motion to dismiss should be, and is, overruled.

It is so ordered.

HUDSPETH, C. J., and BICKLEY, and ZINN, JJ., concur.

SADLER, J., did not participate.