910 P.2d 957

STATE of New Mexico ex rel. STATE EN-
GINEER and Pecos Valley Artesian
Conservancy District, Plaintiffs–Appel-
lants,

v.

L.T. LEWIS, et al., United States of
America and Mrs. George Thomas
Smith, Defendants–Appellees.

No. 16349.

Court of Appeals of New Mexico.

Nov. 28, 1995.

Certiorari Denied Jan. 31, 1996.

324

Tom Udall, Attorney General, DL Sanders, Special Assistant Attorney General, Santa Fe, for Plaintiff–Appellant New Mexico State Engineer.

John P. Hays, Potter, Mills & Hays, P.A., Santa Fe, for Defendant–Appellee Mrs. George Thomas Smith.

*OPINION*

BLACK, Judge.

The opinion filed October 27, 1995 is withdrawn and the following is substituted therefor. The State Engineer's petition for rehearing is denied.

Mrs. George Thomas Smith (Smith) is the owner of the Terrell Ranch which sits astride the headwaters of the Gallinas River. Smith diverts and/or impounds surface waters of the Gallinas River in fourteen small ponds used for stock watering and/or recreational purposes. The State Engineer maintains such waters are subject to his jurisdiction and Smith has no right to impound such water without a permit from his office. The district court relied upon NMSA 1978, Section 72–5–32 (Repl.1985), to conclude that Smith did not require a State Engineer's permit for any of her ponds. The State Engineer challenges the district court's interpretation and application of this legislation. We affirm.

## I. FACTS

The State Engineer has been involved in an adjudication of the water rights within the Pecos River and its related basins for several years. *See, e.g., State ex rel. Reynolds v. Pecos Valley Artesian Conservancy Dist.,* 99 N.M. 699, 663 P.2d 358 (1983). Since the Gallinas River is a tributary of the Pecos River, this adjudication covers the Gallinas and hydrologically related groundwater.

The Terrell Ranch is used for raising cattle and has been in Smith's family since 1922. The Ranch has fourteen small ponds which were constructed between the early 1930s and the late 1960s. The ponds have been used for watering livestock and/or non-commercial recreational purposes, principally fishing, by members of Smith's family and their guests. None of the ponds holds in excess of ten acre-feet of water, and only two have dams which are greater than ten feet in height.

Smith received Offers of Judgment from the State Engineer on thirteen of the fourteen ponds. Since Smith had not been issued a permit to appropriate water, the State Engineer offered a judgment of "no [water] rights" for these ponds. Smith declined the State Engineer's Offers of Judgment.

The district court held a hearing on the State Engineer's claim that Smith lacked water rights for these ponds. Smith claimed the ponds were exempt pursuant to Section 72–5–32. The State Engineer challenges the district court's interpretation of that statute as embodied in the following conclusions of law:

8. Under well recognized and accepted rules of statutory construction, when the Legislature required that dams of the specified height and capacity comply with Laws 1941, Chapter 126, as amended, in § 72–5–32 N.M.S.A.1978, by necessary implication, the statute does not require compliance with said laws in connection with dams less than ten (10) feet in height above the lowest ground surface elevation which do not impound more than ten (10) acre-feet of water.

9. Section 72–5–32 creates an implied exemption for recreational ponds, which are

created by dams less than ten (10) feet in height above the lowest ground surface elevation and which do not impound more than ten (10) acre-feet of water, from the general statutory requirement [of compliance with Law 1941, Chapter 126, as amended, and applicable to the appropriation and utilization of water] that a permit be obtained from the state engineer before the public surface waters of the state may be appropriated for beneficial use, and eliminates the necessity of obtaining such a permit from the state engineer for those ponds.

## II. STANDARD OF REVIEW

██ This case does not require a review of technical evidence on a subject which requires deference to the recognized expertise of the State Engineer. Rather, it revolves around the correct legal interpretation of statutory language. The primary goal of the court when reviewing and interpreting a statute is to give effect to the intent of the legislature. *Draper v. Mountain States Mut. Cas. Co.*, 116 N.M. 775, 777, 867 P.2d 1157, 1159 (1994). If the meaning of a statute is truly clear, it is the responsibility of the judiciary to apply it as written and not second guess the legislature's policy choices. *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 352, 871 P.2d 1352, 1358 (1994).

## III. DEFENDANT'S PONDS ARE EXEMPT FROM REGULATIONS UNDER SECTION 72–5–32

The first section of Chapter 72, Article 5 of the New Mexico statutes establishes the general rule that a permit is required from the State Engineer before surface water may be appropriated for private use. NMSA 1978, §§ 72–5–1 (Repl.1985). However, other provisions of Chapter 72 set forth various exceptions to the general permit requirement. *See, e.g.*, NMSA 1978, § 72–9–3, –12–1 (Repl. 1985). We must read Section 72–5–32 in this context. That section provides in relevant part:

> Any person, association or corporation, public or private, the state of New Mexico or the United States of America, hereafter intending to construct a dam to impound the public waters of the state for any purpose, which dam exceeds ten feet in height above the lowest natural ground surface elevation or impounds more than ten-acre feet [sic] of water, shall comply with the provisions of Laws 1941, Chapter 126, as amended, applicable to the appropriation and utilization of water; provided that this section shall not be construed to apply to stock dams whose maximum storage capacity does not exceed ten-acre feet [sic].[1]

Under the language of Section 72–5–32, then, anyone who wishes to create a dam which will impound public waters must follow the State Engineer's permit procedure if the dam is either (1) over ten feet in height or (2) impounds more than ten acre-feet of water. The statute does not expressly require a permit for dams which do not exceed ten feet or which impound no more than ten acre-feet of water. The State Engineer argues that, since the statute does not expressly exclude smaller dams, the general rule requiring a permit applies. Smith argues that, by enacting Section 72–5–32, the legislature expressly enumerated the dams and resulting ponds which required permits and exempted those not mentioned. We agree with Smith.

██ While Section 72–5–1 contains the general rule pertaining to the appropriation of all water rights, Section 72–5–32 applies specifically to dams and the water they impound. "[A] statute dealing with a specific subject will be considered an exception to, and given effect over, a more general statute." *Stinbrink v. Farmers Ins. Co.*, 111 N.M. 179, 182, 803 P.2d 664, 667 (1990). Moreover, the Court will read the requirements of one portion of a statute into the requirements of another portion only where there is no plausible reason for the difference under the two statutory provisions. *Bierner v. State Taxation & Revenue Dep't*, 113 N.M. 696, 698, 831 P.2d 995, 997 (Ct.App.1992). Here, it is implicit in the statutory language that the legislature did not consider such

---

**1.** The Laws of 1941, Chapter 126 are currently codified in NMSA 1978, Sections 72–5–1 to –39 (Repl.1985 & Cum.Supp.1995), and include the permitting requirements and procedures.

small dams and ponds a threat to the appropriation procedure. Section 72–5–32 refers to "a dam to impound the public waters of the state *for any purpose.*" (Emphasis added.) The scope of the statute is clearly dams and the ponds created by them. The plain language of the statute then provides that only ponds created by the enumerated types of dams are required to comply "with the provisions of Laws 1941, Chapter 126, as amended, *applicable to the appropriation and utilization of water.*" (Emphasis added.) § 72–5–32. Ponds which do not meet the dam height and pond size criteria contained in the statute are, therefore, exempted from the permit requirements. The "courts have a duty to recognize what is necessarily implicit in statutory language." *Naranjo v. Paull,* 111 N.M. 165, 168, 803 P.2d 254, 257 (Ct.App.1990).

We would reach the same result by applying the old rule of statutory construction *inclusio unius est exclusio alterius;* the inclusion of one thing is the exclusion of another. *State ex rel. Clark v. Governor of N.M.,* 120 N.M. 562, 904 P.2d 11 (1995). The legislature specifically required permits for dams which exceed ten feet or impound more than ten acre-feet of water, indicating legislative intent to allow the construction of dams and ponds which do not meet these statutory minimums without a permit from the State Engineer. *Cf. Morningstar Water Users Ass'n v. New Mexico Pub. Util. Comm'n,* 120 N.M. 579, 904 P.2d 28 (1995) (while the inclusion of one group does not automatically exclude others, it does offer insight into legislative intent).

■ Our interpretation of the language of Section 72–5–32 is reinforced by a relatively contemporaneous New Mexico Attorney General's opinion. The predecessor of Section 72–5–32 was adopted in 1941. In 1947, the State Engineer's Office requested an Attorney General's opinion on whether the New Mexico Game and Fish Department needed a permit from the State Engineer to construct small dams to improve fish habitat in existing streams. The 1947 Attorney General's Opinion interpreted the 1941 predecessor of Section 72–5–32. That version of the statute provided:

Any person, association, or corporation, public or private, the State of New Mexico, or the United States of America, hereafter intending to construct a dam to impound the public *waters of the State for any purpose, which dam exceeds ten feet in height above the lowest natural ground surface elevation or impounds more than ten acre feet of water, shall comply* with the provisions of this act applicable to the appropriation and utilization of water; provided, that this section *shall not be construed to apply to stock dams whose maximum storage capacity does not exceed ten acre feet* or to the construction of works designed solely for silt retention and which do not impound or divert water for beneficial use.

1941 N.M.Laws, ch. 126, § 25 (emphasis added). The exemptions were couched in much the same language as the present statute except the silt retention provision has been altered to refer generally to the United States Army Corps of Engineers. In interpreting this statute shortly after its passage, the New Mexico Attorney General opined:

It is my opinion that this section sets up three exceptions under which it is not necessary to make application to appropriate public waters:

(1) if the dam does not exceed 10 feet in height above the lowest natural ground surface elevation and does not impound more than ten acre-feet of water; (2) if the dam is a stock dam and its maximum storage capacity does not exceed ten acre-feet, even though the dam is more than ten feet in height; and (3) if the construction of the works is designed solely for silt retention and does not impound or divert water for beneficial use, even though the dam is more than ten feet in height or impounds more than ten acre-feet of water.

N.M.Att'y Gen.Op. 4976 (1947).

■ We must interpret the language of a statute as the legislature understood it at the time it was enacted. *Wellborn Paint Mfg. Co. v. New Mexico Employment Sec. Dep't,* 101 N.M. 534, 537, 685 P.2d 389, 392 (Ct.App.1984). An early interpretation and uniform administration of a statute by executive officers will not be lightly overturned.

*State ex rel. Dickson v. Aldridge,* 66 N.M. 390, 394, 348 P.2d 1002, 1004 (1960); *Temple Lodge No. 6, A.F. & A.M. v. Tierney,* 37 N.M. 178, 187, 20 P.2d 280, 284 (1933).

 We do not disagree with the State Engineer that any regulation issued under his authority is presumed to be a proper implementation of New Mexico water law. NMSA 1978, § 72–2–8(H) (Repl.Pamp.1985). However, the Engineer's Office has advanced no evidence that it ever issued any such regulation or otherwise challenged the Attorney General's statutory interpretation or administered the provisions relating to small dams and ponds so as to require a permit.[2] Nor do we find evidence the State Engineer ever sought to have the statute amended to alter the Attorney General's interpretation. To the contrary, the State Engineer's Office appears to have shared the Attorney General's statutory interpretation. In 1979, the legislature amended Section 72–5–32 to delete the third exemption for silt retention dams. 1979 N.M.Laws, ch. 114, § 1. The State Engineer submitted a memorandum in support of the legislature's amendment. The memorandum states that, by deleting the silt retention exemption, the corrective legislation would require "persons who intend to construct works which are designed solely for silt retention *and which exceed ten feet in height or impound more than ten acre-feet to comply with all the provisions* of law applicable to appropriation and utilization of water . . . ." (Emphasis added.)

 This memorandum clearly indicates that, like the earlier Attorney General's Opinion, the State Engineer recognized that Section 72–5–32 contains exemptions to the statutory permit requirements for dams which do not exceed ten feet in height or impound more than ten acre-feet of water. Where a statute has long been interpreted in a certain way and the legislature subsequently amends the statute but does not indicate

an intent to change the accepted interpretation, legislative acquiescence may be presumed. *In re Morrow's Will,* 41 N.M. 117, 64 P.2d 1300 (1937) (per curiam); *Hasty v. Broughton,* 133 Mich.App. 107, 348 N.W.2d 299 (1984).

 The State Engineer argues that interpreting Section 72–5–32 in this fashion "would render the state engineer's administrative authority impotent, would allow for the virtual unlimited appropriation of water and, ultimately, impair every prior existing water right. It would be chaos." While we are not as convinced as the State Engineer of the dire consequences of this parade of horribles, we do recognize some potential problems created by our statutory interpretation. However, the consequences of a legislative policy embodied in an unambiguous statute are matters for the legislature, not this Court. *Irvine v. St. Joseph Hosp., Inc.,* 102 N.M. 572, 576, 698 P.2d 442, 446 (Ct.App. 1984), *cert. quashed,* 102 N.M. 564, 698 P.2d 434 (1985). It is the province of the legislature and not the court to change a statute. *Varos v. Union Oil Co.,* 101 N.M. 713, 715, 688 P.2d 31, 33 (Ct.App.1984). "Statutory language that is clear and unambiguous must be given effect [by the courts]." *V.P. Clarence Co. v. Colgate,* 115 N.M. 471, 473, 853 P.2d 722, 724 (1993). We find Section 72–5–32 clear and unambiguous.

The judgment of the district court is affirmed.

IT IS SO ORDERED.

ALARID and FLORES, JJ., concur.

---

**2.** In *State ex rel. Reynolds v. Lovelady,* No. 12,776 (N.M. Dec. 29, 1980) the State Engineer did take the position that this statute did not authorize "off-channel" impoundment and sought to enjoin the defendants from such use. The district court denied relief and, in an unreported decision, the Supreme Court affirmed.