ATTREP, Judge (dissenting).
{58} Because I believe we can and should give effect to the Legislature's choice of the words "patient's claim" in Section 41-5-12, I conclude that the assignment of the equitable indemnification claim[4] to Leger is not barred by the MMA. The majority having concluded to the contrary, I respectfully dissent.
{59} The issue here is whether the Legislature intended to differentiate between "malpractice claims" and "patient's claims" in the MMA such that the use of the latter term in Section 41-5-12 (the non-assignability provision) was meant to restrict the assignability of only certain types of malpractice claims-namely, "patient's claims." Asserting ambiguity in the Act, the majority relies heavily on general principles derived from Wilschinsky , Duarte-Afara , and Baker in determining equivalence between "patient's claim" and "malpractice claim" and in determining that, notwithstanding language to the contrary, the Legislature meant for the non-assignability provision to apply to all malpractice claims. Majority Op. ¶¶ 26-32, 39-40. I think it crucial to closely examine the words in the Act before depending on broad generalizations derived from the judiciary's added gloss in construing the MMA. This best ensures that we "interpret the language of a statute as the [L]egislature understood it at the time it was enacted." Lewis , 1996-NMCA-019, ¶ 13, 121 N.M. 323, 910 P.2d 957. In doing so, I conclude the words selected by the Legislature require a different result than the majority. And it is incumbent upon this Court to give such words effect, as they are the "primary indicator of legislative intent[,]" if doing so does not result in "injustice, absurdity or contradiction[.]" Baker , 2013-NMSC-043, ¶ 11, 309 P.3d 1047 (internal quotation marks and citation omitted); see id. ¶¶ 1, 13 (undertaking fulsome textual analysis and disagreeing with this Court's conclusion that the text of the MMA literally excluded certain entities from the definition of "health care provider").
{60} Turning to the statutory language in the Act, the non-assignability provision provides: "A patient's claim for compensation *1054 under the [MMA] is not assignable." Section 41-5-12. "Patient's claim" or "patient's claim for compensation" is not a defined term in the MMA, but "patient" is defined as "a natural person who received or should have received health care from a licensed health care provider, under a contract, express or implied[.]" Section 41-5-3(E). To determine the meaning of "patient's claim," I look to the ordinary meaning of the word "claim." See State v. Ogden , 1994-NMSC-029, ¶ 24, 118 N.M. 234, 880 P.2d 845 ("The words of a statute, including terms not statutorily defined, should be given their ordinary meaning absent clear and express legislative intention to the contrary."). A "claim" is "[a]n interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing; cause of action." Black's Law Dictionary 302 (10th ed. 2014). Thus, a "patient's claim" is a natural person's cause of action under the MMA, arising from the health care that person received or should have received from a health care provider.
{61} Turning next to the definition of "malpractice claim," the majority's equivalence argument breaks down. Under the MMA, " 'malpractice claim' includes any cause of action arising in this state against a health care provider for medical treatment, lack of medical treatment or other claimed departure from accepted standards of health care which proximately results in injury to the patient, whether the patient's claim or cause of action sounds in tort or contract, and includes but is not limited to actions based on battery or wrongful death[.]" Section 41-5-3(C) (emphasis added). The use of the words "includes" and "any" at the beginning of the definition indicates that "malpractice claim" is wide sweeping, encompassing all causes of action against a health care provider based on acts of malpractice that proximately result in injury to the patient. Cf. State v. Strauch , 2015-NMSC-009, ¶ 37, 345 P.3d 317 (noting that "the word 'includes' implies an incomplete listing" (internal quotation marks and citation omitted) ); Mueller v. Sample , 2004-NMCA-075, ¶ 16, 135 N.M. 748, 93 P.3d 769 (reading "any cause of action or suit" to include claims filed both by the plaintiff and the defendant even though contractual term referred only to the defendant); Merriam-Webster Dictionary , http://www.merriam-webster.com/dictionary/any (last visited on Oct. 28, 2018) (defining "any" to mean, among other things, "one, some, or all indiscriminately of whatever quantity ... all"). The reference to "patient's claim" within the definition of "malpractice claim" does not, in my opinion, render the terms equivalent. Reading the definition in this way would render many of its words superfluous. See Baker , 2013-NMSC-043, ¶ 24, 309 P.3d 1047 ("[T]he Legislature is presumed not to have used any surplus words in a statute; each word is to be given meaning[,]" and we "must interpret a statute so as to avoid rendering the Legislature's language superfluous." (alteration, internal quotation marks, and citation omitted) ).
{62} Appellants' related assertion at oral argument that it was "inconceivable" that the Legislature had anything other than "patient's claims" in mind when the MMA was enacted is not only contrary to the language in the Act, but also is contrary to the legal reality in which the MMA was adopted. See State ex rel. King v. B & B Inv. Grp. , 2014-NMSC-024, ¶ 38, 329 P.3d 658 (stating that the appellate courts operate "under the presumption that the [L]egislature acted with full knowledge of relevant statutory and common law and did not intend to enact a law inconsistent with existing law" (alterations, internal quotation marks, and citation omitted) ). Around the time the MMA was enacted, indemnity and contribution claims certainly were litigated in the medical malpractice context. See Uniform Contribution Among Tortfeasors Act, NMSA 1978, §§ 41-3-1 to -8 (1947, as amended through 1987); Dessauer v. Mem'l Gen. Hosp. , 1981-NMCA-051, ¶ 1, 96 N.M. 92, 628 P.2d 337 (contribution/indemnity suit brought by hospital and nurse against doctor); Goffe v. Pharmaseal Labs., Inc. , 1976-NMCA-123, ¶ 14, 90 N.M. 764, 568 P.2d 600 (mentioning cross-claim against doctor and hospital), aff'd in part, rev'd in part , 1977-NMSC-071, 90 N.M. 753, 568 P.2d 589. In simple terms, such claims involve causes of action between or among health care providers based on acts of malpractice that resulted in injury to a patient-that *1055 is, they are "malpractice claims" within the meaning of the MMA.[5] See Dessauer , 1981-NMCA-051, ¶¶ 26-29, 96 N.M. 92, 628 P.2d 337 (stating that in order to hold doctor liable for contribution, doctor must be determined negligent and to hold doctor liable for indemnity, doctor must be vicariously liable for nurse's negligence); see also Caglioti v. Dist. Hosp. Partners, Lp , 933 A.2d 800, 816 (D.C. 2007) (equating equitable indemnity claim to malpractice claim and providing that, to recover, indemnitee "would have the burden of proving the applicable standard of care, a deviation from that standard and a causal relationship between the deviation and the injury"); Faden v. Robbins , 88 A.D.2d 631, 450 N.Y.S.2d 238, 239 (1982) ("To be entitled to contribution from the third-party defendants, [the doctor] will have to establish that what the third-party defendants did or failed to do in their treatment of [the] plaintiff constituted a departure from the applicable standards of medical skill and care." (alteration, internal quotation marks, and citation omitted) ).
{63} And perhaps it too simple a point to make, but the Legislature clearly was capable of using the term "malpractice claim" in the MMA when it chose to do so. Other than defining "malpractice claim," the Legislature used that term sixteen times in the MMA. See §§ 41-5-3(C), -4, -5(C), -6(C), -7(A), -8, -14(A), -17(H), - 21, -22, -23, -25(A). Had the Legislature intended that all malpractice claims be non-assignable, it could have used the term "malpractice claim" in Section 41-5-12. See State v. Greenwood , 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted) ). It did not. Given that the language of the MMA supports a distinction between "patient's claims" and "malpractice claims," I think we ought to give effect to the Legislature's choice of words-namely, that the non-assignability provision applies to "patient's claims" and not to all "malpractice claims" as the majority concludes.
{64} Giving effect to the specific language in the non-assignability provision is not inconsistent with the legislative intent behind the MMA, nor would it lead to an absurd or unreasonable result. State v. Marshall , 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801 ("In construing the statute, our primary goal is to give effect to the intent of the Legislature. We do this by giving effect to the plain meaning of the words of statute, unless this leads to an absurd or unreasonable result." (citation omitted) ). The stated purpose of the MMA is "to promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico." Section 41-5-2. The majority posits that it "can discern no reason why the Legislature would intend to subject indemnification claims to every MMA restriction except one"-the non-assignability provision. Majority Op. ¶ 40. In making this contention, the majority assumes that the non-assignability provision is a benefit that inures to health care providers. Unlike the other "restrictions" in the MMA-such as the damages cap, Section 41-5-6, and statute of repose, Section 41-5-13-the non-assignability provision has not been identified by our courts as a benefit to health care providers. See Baker , 2013-NMSC-043, ¶ 18, 309 P.3d 1047 (listing benefits in the Act to health care providers). And, indeed, this provision seems designed not to benefit health care providers but to protect patients. See Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz. , 2002-NMCA-080, ¶ 10, 132 N.M. 518, 51 P.3d 1172 ("The main concern ... was that assignment of personal injury claims would lead to unscrupulous trafficking in litigation as a commodity."); see also Kimball Int'l, Inc. v. Northfield Metal Prods. , 334 N.J.Super. 596, 760 A.2d 794, 803 (2000) ("The prohibition against the assignment of tort claims is designed to protect the interests *1056 of injured persons, not alleged tortfeasors who may have claims against other alleged tortfeasors."). As such, I think it a false premise that the non-assignability provision is a restriction-or benefit to health care providers-that should apply equally to all malpractice claims.
{65} Appellants' legislative intent argument also is unavailing. While Appellants speculate that permitting the assignment of indemnity claims runs contrary to the legislative intent of the MMA because assignment will make it more likely for these claims to be litigated and, thereby, drive up the costs of insuring health care providers, the opposite may also be true. It seems just as likely that the overall effect of limiting the assignability of indemnity claims may make settlements more difficult to obtain-resulting in lengthier and more expensive litigation, thereby driving up the costs of insuring health care providers. See Bush v. Super. Ct. of Sacramento Cty. , 10 Cal.App.4th 1374, 13 Cal.Rptr.2d 382, 389 (1992) ("Sanctioning the assignment of [equitable indemnification] chose in action to the tort plaintiff fosters settlement with the tortfeasor most willing to settle."); Caglioti , 933 A.2d at 816 ("Although in this instance the assignment of the equitable indemnity claim perhaps has prolonged the litigation, in other instances the assignment could provide an additional means of settling the underlying case."); Rubenstein v. Royal Ins. Co. of Am. , 45 Mass.App.Ct. 244, 696 N.E.2d 973, 975 (1998) ("[A]n assignment of the right of contribution encourages settlement."); cf. Gonzales v. Atnip , 1984-NMCA-128, ¶ 1, 102 N.M. 194, 692 P.2d 1343 ("The historical and current public policy of this state is to favor the settlement of disputed claims[, including] ... the settlement of lawsuits." (citation omitted) ). Frankly, this fiscal impact analysis is beyond the expertise of the judiciary and should be left for the Legislature to examine and make appropriate changes to the MMA if need be. See Lewis , 1996-NMCA-019, ¶ 16, 121 N.M. 323, 910 P.2d 957 (leaving for the Legislature to address "potential problems created by our statutory interpretation" of clear and unambiguous provision).
{66} There also is no inherent absurdity in the Legislature prohibiting assignments of "patient's claims" with no corresponding prohibition against the indemnity claim at issue in this case. Section 41-5-12 was in line with the common law when the MMA was enacted. Cf. San Juan Agric. Water Users Ass'n v. KNME-TV , 2011-NMSC-011, ¶ 20, 150 N.M. 64, 257 P.3d 884 ("When [the courts] interprets statutes, we do so against a background of common-law principles."). At the time of enactment, it was long established that, as a general principle, "choses in action are assignable," the pertinent exception being personal injury claims. Parker v. Beasley , 1936-NMSC-004, ¶ 10, 40 N.M. 68, 54 P.2d 687 ; see Quality Chiropractic , 2002-NMCA-080, ¶ 8, 132 N.M. 518, 51 P.3d 1172 (stating that "[p]ersonal injury claims ... remained unassignable" even when assignment of other claims was permitted over time); 6A C.J.S. Assignments § 42 (2016) ("[A] chose in action, whether arising in tort or contract, is generally assignable, since a chose in action constitutes personal property." (footnote omitted) ); see also Emp'rs Fire Ins. Co. v. Welch , 1967-NMSC-248, ¶ 5, 78 N.M. 494, 433 P.2d 79 (mentioning assignment of an indemnity claim). Under these principles, a patient's claim, which is a personal injury claim, would not be assignable, but an indemnity claim, which remains distinct from the underlying tort, would be assignable. See Duarte-Afara , 2011-NMCA-112, ¶ 18, 267 P.3d 70. The MMA as written maintains this common law distinction. See San Juan Agric. Water Users Ass'n , 2011-NMSC-011, ¶ 20, 150 N.M. 64, 257 P.3d 884 ("We presume that the Legislature enacts statutes that are consistent with the common law and that the common law applies unless it is clearly abrogated.").
{67} To support its construction of the Act, the majority relies on an "unreasonable classification"-i.e., that if Section 41-5-12 is applied only to "patient's claims," then Wilschinsky -type claims (which are personal injury claims) would be assignable while patient's claims would not. Majority Op. ¶¶ 39-40. But the Legislature doubtless did not have Wilschinsky -type claims in mind when it enacted Section 41-5-12 in 1976 because these claims were not recognized by our *1057 Supreme Court until 1989. See Wilschinsky , 1989-NMSC-047, ¶¶ 5-17, 108 N.M. 511, 775 P.2d 713. The assignment of such personal injury claims would be barred at common law, and there is no countervailing legislative intent in Section 41-5-12 to abrogate this principle. See San Juan Agric. Water Users Ass'n , 2011-NMSC-011, ¶ 20, 150 N.M. 64, 257 P.3d 884 ("A statute will be interpreted as supplanting the common law only if there is an explicit indication that the [L]egislature so intended." (internal quotation marks and citation omitted) ). Regardless, the majority's "unreasonable classification," having been created by the judiciary, seems like a thin reed upon which to lean in effectuating the legislative intent behind Section 41-5-12. Cf. Lewis , 1996-NMCA-019, ¶ 13, 121 N.M. 323, 910 P.2d 957 ("We must interpret the language of a statute as the [L]egislature understood it at the time it was enacted.").
{68} It is worth highlighting that the majority opinion entirely eliminates the right to assign any and all malpractice claims falling within the MMA. Before brushing aside the free alienability of property interests, I think we ought to require a clearer expression of legislative intent than what we have here. See San Juan Agric. Water Users Ass'n , 2011-NMSC-011, ¶ 20, 150 N.M. 64, 257 P.3d 884 ; 2B Singer, supra , § 50:1, at 149-51 ("Absent an indication that a legislature intends a statute to supplant common law, courts should not give it that effect."); see also State ex rel. Bingaman v. Valley Sav. & Loan Ass'n , 1981-NMSC-108, ¶ 13, 97 N.M. 8, 636 P.2d 279 ("At common law, restraints on alienation were prohibited."); cf. Espinosa v. United of Omaha Life Ins. Co. , 2006-NMCA-075, ¶ 27, 139 N.M. 691, 137 P.3d 631 (noting that "anti-assignment clauses are generally disfavored").
{69} Finally, the approach taken by our Court today appears to stand alone. Of the few courts that have specifically examined the assignability of indemnity and contribution claims to the original plaintiff in the medical malpractice context, I have found no published opinions that forbid such assignment. See, e.g. , Bush , 13 Cal.Rptr.2d at 384-90 (permitting assignment of indemnity or contribution claims against medical providers to original plaintiff, noting strong preference for assignability, and rejecting double recovery arguments); Caglioti , 933 A.2d at 807-17 (same); Robarts v. Diaco , 581 So.2d 911, 915 (Fla. Dist. Ct. App. 1991) (same); cf. Kimball Int'l , 760 A.2d at 803 (permitting assignment of indemnification claim to the plaintiff in products liability case). These courts address similar concerns raised by the majority regarding the potential for manipulation of claims by a plaintiff in order to obtain double recovery. The courts conclude that the possibility of a recovery in excess of tort damages does not bar assignment of an indemnification claim because, as a matter of policy, a windfall, if any, should benefit the injured plaintiff rather than a tortfeasor. See Bush , 13 Cal.Rptr.2d at 390 ; Caglioti , 933 A.2d at 814-15 ; Robarts , 581 So.2d at 915. These policy considerations counsel in favor of permitting the assignment in this case, particularly in light of the fact that, because the amount of Plaintiffs' damages and the settlement amount are not of record, it is unclear that Plaintiffs will obtain full recovery if the assignment of the indemnity claim is disallowed.
{70} For the foregoing reasons, I would affirm the district court's denial of Appellants' motion to dismiss.[6]

As noted at oral argument and reflected in the second amended third-party complaint for indemnification or contribution, the claim at issue on appeal may actually be a contribution claim, not an indemnity claim. Because this distinction does not affect my analysis and because the parties in their briefing and the majority in its opinion refer to Leger's claim as an indemnification claim, I do the same.

Our holding in Duarte-Afara made it clear that equitable indemnification claims fall under the ambit of the MMA and are "malpractice claims." 2011-NMCA-112, ¶ 15, 267 P.3d 70. This conclusion was reached, in part, by resort to Wilschinsky . Duarte-Afara , 2011-NMCA-112, ¶ 15, 267 P.3d 70. While I believe it was unnecessary for our Court to go much beyond the statutory language of the MMA in reaching this conclusion, the outcome of Duarte-Afara is sound. Our decision in Duarte-Afara does not however, as Appellants imply, mean that the Legislature could not have had in mind such claims when drafting the MMA.

I have limited my analysis to the issue addressed by the majority opinion and do not address the additional arguments raised by the Appellants, including the assignability of the indemnity claim under the common law and Leger's compliance with Sections 41-5-13 and -15.